Melissa HILLER, et al., Plaintiffs,

v.

COUNTY OF SUFFOLK,
et al., Defendants.

No. CV–95–4496 (JS)(VVP).

United States District Court,
E.D. New York.

Jan. 21, 2000.

John Ray, for plaintiffs.

Kelly Reape, and Theodore Sklar, for Robert J. Cimino, Suffolk County Attorney.

### DECISION AND ORDER

POHORELSKY, United States Magistrate Judge.

At the close of the presentation of evidence in this case, before submission of the

matter to the jury, the parties made various motions for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure upon which the court reserved decision. Specifically, the plaintiffs moved for judgment as a matter of law on their claims under the New York Human Rights Law, N.Y.Exec.Law § 296, against the defendants Peter Cosgrove and Robert Gaffney in their individual capacities. The defendants moved for judgment as a matter of law in favor of the defendants Peter Cosgrove and Robert Gaffney in their individual capacities based both on legislative immunity and on governmental immunity afforded to public officials under New York law for actions involving the exercise of discretion. As further explained below, the plaintiffs' motion is DENIED, and the defendants' motions are GRANTED in part and DENIED in part.

*Rule 50 Standards.* Motions for judgment as a matter of law under Rule 50 are governed by the same standards as those that govern motions for summary judgment. *See, e.g., Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir.1993). Thus, under Rule 50(a), "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As on summary judgment, the trial judge must draw all reasonable inferences, and resolve all credibility assessments, in favor of the non-moving party. *See United States v. One Parcel of Property Located at 121 Allen Place,* 75 F.3d 118, 121 (2d Cir.1996).

■ *Legislative Immunity.* The Supreme Court has unequivocally stated that, in actions brought under 42 U.S.C. § 1983, state and local legislators are entitled to absolute immunity from liability for their legislative activities. *See, e.g., Bogan v. Scott–Harris,* 523 U.S. 44, ——, 118 S.Ct. 966, 970, 140 L.Ed.2d 79 (1998); *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The scope of the privilege depends on whether the act for which immunity is sought is legislative. *See Bogan,* 118 S.Ct. at 972–73. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 973. Moreover, legislative immunity may extend not only to officials in the legislative branch of government, but to executive officials as well when they perform legislative functions. *See id.* The introduction of a proposed budget and the subsequent signing into law of an ordinance adopting the budget are legislative functions for which executive officials enjoy absolute immunity from § 1983 liability regardless of their motive or intent. *See id.*

■ In this case, the only evidence of the defendant Robert Gaffney's involvement in the adoption and implementation of the affirmative action program that gave rise to the plaintiffs' claims was his inclusion of the funding request for the program in the budget he submitted to the Suffolk County legislature. There is no evidence that he urged the creation of the program or that he formulated the program. Thus his acts are indistinguishable from the acts of the mayor in *Bogan* which were accorded absolute legislative immunity in that decision. *See Bogan,* 118 S.Ct. at 969. Accordingly, his motion for judgment as a matter of law must be granted.

■ As to Cosgrove, the result is different because his actions involved much more than proposing a budget. By his own admission, he conceived of the program and directed his subordinates to formulate the details. He gave direction as necessary when questions arose on those details which required his attention. Those actions were not legislative in any sense, but rather executive and administrative. Thus, although he also assisted in the preparation of the budgetary aspects of the program so that it could be included in the budget submitted to the legislature, and although he probably appeared before the legislative committee that reviewed the budget in which the program was included,

those legislative functions were by no means his only activities in connection to the affirmative action program. Accordingly, the motion for judgment as a matter of law on the basis of legislative immunity must be denied as to Cosgrove.

Although the defendants urge that legislative immunity, being a creature of the common law, *see Bogan,* 118 S.Ct. at 970–72; *Tenney,* 341 U.S. at 372–76, 71 S.Ct. 783, ought to shield the individual defendants from liability on the plaintiffs' state Human Rights Law claims, they offer no specific authority in New York law for the existence of legislative immunity, as distinguished from the more general immunity accorded to public officials discussed below. The court recognizes that the Supreme Court based its decision regarding legislative immunity under § 1983 in part on the common law as it existed in New York when § 1983 was enacted. *See Bogan,* 118 S.Ct. at 970, *citing Wilson v. New York,* 1 Denio 595 (N.Y.1845). The *Wilson* case, however, turned on judicial, not legislative, immunity, and therefore is not authority for the legislative immunity upon which the defendants seek to rely here. *See Wilson v. City of New York,* 1 Denio 595 (N.Y.1845). The court therefore declines to extend legislative immunity to shield Gaffney and Cosgrove from liability on the plaintiffs' Human Rights Law claims.

*State Law Immunity for Discretionary Acts.* As noted briefly above, New York has long afforded public officials immunity for their discretionary conduct. *See id.* Although some aspects of the coverage and contours of that immunity remain undecided, four Court of Appeals decisions in the last two decades have refined what was once thought to be a public official's absolute immunity from liability for discretionary acts. Thus, in *Tango v. Tulevech,* 61 N.Y.2d 34, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983), the court cited with approval "the rule that when official action involved the exercise of discretion, the officer is not liable for the injurious consequences of

that action even if resulting from negligence or malice." *Id.* at 40, 471 N.Y.S.2d 73, 459 N.E.2d 182. Three years later, however, in *Tarter v. State,* 68 N.Y.2d 511, 510 N.Y.S.2d 528, 503 N.E.2d 84 (1986), the court trimmed the rule by limiting absolute immunity to only those discretionary acts that are considered judicial in nature. *Id.* at 519, 510 N.Y.S.2d 528, 503 N.E.2d 84. The court further clarified the rule in *Arteaga v. State,* 72 N.Y.2d 212, 532 N.Y.S.2d 57, 527 N.E.2d 1194 (1988), which articulated a distinction between absolute and qualified immunity for a public official's discretionary acts:

> Whether an action receives only qualified immunity, shielding the government except when there is bad faith or the action taken is without a reasonable basis ... or absolute immunity, where reasonableness or bad faith is irrelevant ... requires an analysis of the functions and duties of the particular governmental official or employee whose conduct is in issue.... The question depends not so much on the importance of the actor's position or its title as on the scope of the delegated discretion and whether the position entails making decisions of a judicial nature—i.e., decisions requiring the application of governing rules to particular facts, an "exercise of reasoned judgment which could typically produce different acceptable results." ...

*Id.* at 216–17, 532 N.Y.S.2d 57, 527 N.E.2d 1194 (citations omitted). Most recently, in *Mon v. City of New York,* 78 N.Y.2d 309, 313, 574 N.Y.S.2d 529, 531–32, 579 N.E.2d 689 (1991) the Court of Appeals unmistakably reaffirmed the viability of *Tango.*

Whether the above common-law immunity for discretionary acts afforded by New York law extends to employment decisions challenged under New York's Human Rights Law is a matter that has not yet been addressed by the Court of Appeals or in any other reported decision. In addition, the *Tarter, Arteaga,* and *Mon* decisions involved the municipality's immunity and did not specifically address how the

immunity principles announced in those cases applied to the individual liability of the public officials themselves. Thus the precise question before this court, *viz.,* whether Gaffney and Cosgrove may be held individually liable under the Human Rights Law for their conduct in this matter, has not been decided by the Court of Appeals or by any lower court. Nevertheless the above decisions provide a sound basis for deciding the issue. Although *Arteaga* reduced the level of immunity afforded for some discretionary acts, it also appeared to accept without any other limitation or reservation that "the State retained its immunity for those governmental actions requiring expert judgment or the exercise of discretion." *Id.* at 216, 532 N.Y.S.2d 57, 527 N.E.2d 1194. The court there also reaffirmed the viability of the immunity rule announced in *Tango* which protected the individual public officers themselves, as opposed to their municipalities. *See id.; Tango,* 61 N.Y.2d at 40, 471 N.Y.S.2d 73, 459 N.E.2d 182. And in *Mon,* the court applied the rule and announced its purpose as follows:

> [W]hen official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action.... Whether absolute or qualified, this immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury.

*Mon,* 78 N.Y.2d at 313, 574 N.Y.S.2d at 531–32, 579 N.E.2d 689. Taken together, these decisions appear to stand for the proposition that, although the immunity is not always absolute, individual public officials enjoy at least qualified immunity from liability for "official action that in-

volves the exercise of discretion or expert judgment in policy matters." *Id.*

 Although it was not made, the court has considered the argument that passage of the state Human Rights Law constitutes a waiver of governmental immunity as to claims under that statute. Clearly, since the statute does not exempt the state and its officials from its coverage, the statute contemplates imposition of liability on them. But recognition that governmental immunity may be asserted as to Human Rights Law claims does not thus render that statute unenforceable against state actors, because the immunity is qualified, not absolute, as to non-judicial matters. Thus, notwithstanding immunity, public officials would still be liable for acts of discrimination made unlawful by the Human Rights Law if they are undertaken in bad faith or without reasonable basis. *See Arteaga,* 72 N.Y.2d at 216–17, 532 N.Y.S.2d 57, 527 N.E.2d 1194. This would include liability for discriminatory hiring decisions made on the basis of animus against a racial or ethnic group, but not as to discretionary policy decisions—such as the adoption of an affirmative action program—which are not clearly unlawful under applicable law and which are spurred, not by animus against a particular group, but by legitimate state interests. This seems to serve the purposes of governmental immunity as announced in *Mon,* without diminishing the applicability of the Human Rights Law to the state and its officials. The court therefore finds no reason to conclude that the enactment of the Human Rights Law constitutes a complete waiver of the governmental immunity otherwise recognized in New York law.

 Given these principles, the court concludes that both Gaffney and Cosgrove enjoy qualified immunity with respect to the plaintiffs' Human Rights Law claims. There was no evidence to suggest that the decisions to formulate and implement the affirmative action program at issue here were anything other than discretionary,

nor was there any evidence to suggest that the decisions were judicial in nature. Accordingly, Gaffney and Cosgrove are entitled to qualified immunity unless "there is bad faith or the action taken is without a reasonable basis." *Arteaga,* 72 N.Y.2d at 216, 532 N.Y.S.2d 57, 527 N.E.2d 1194.

There is no evidence in the record upon which a jury could find that the decisions to formulate and implement the affirmative action program were undertaken by either Gaffney or Cosgrove in bad faith. Nor is there evidence upon which a jury could find that those decisions were without a reasonable basis. Indeed, the evidence is entirely to the contrary. Cosgrove explained in detail his own thought processes and the factors that led him to suggest that the program be implemented, and the various statutory and other considerations that led to the formulation of a race-conscious, as opposed to race-neutral, plan. His explanation portrayed starkly the grim complexities of the legal situation in which he found himself. His department had been saddled several years before with a consent decree which demanded, on the one hand, that the department not discriminate in hiring on the basis of race or national origin, but which required, on the other hand, that the department discriminate by giving positions to certain minorities purely on the basis of race and national origin. His department faced reexamination by an unforgiving Department of Justice whose concentration on "numbers" and "percentages" was manifest. Knowing that the "numbers" of minorities in his department had not improved despite absolute compliance with the consent decree and the use of a test specifically mandated by the Department of Justice, Cosgrove sought a way to improve the "numbers," and consulted with various other public officials, including the County Attorney, to insure that the program he conceived met legal requirements. Those consultations revealed among other things the existence of Civil Service requirements mandating that the program he conceived, which was initially not race-conscious, be restricted on the basis of race and national origin. As noted in this court's previous rulings in this case regarding qualified immunity, the Supreme Court's decisions to that point provided little specific guidance on the types of affirmative action programs that would pass muster in the circumstances Cosgrove faced, and the county's efforts to obtain review and approval by the Department of Justice received neither endorsement nor disapproval, only stone silence from a bureaucracy apparently unwilling or unable to take any stand except perhaps to criticize his department's "numbers." Cosgrove's decision to formulate and to implement the plan was thus undertaken with careful consideration and with an effort to follow the law. That the program was later found not to pass constitutional muster on the basis of a Supreme Court decision rendered more than a year after the program was implemented does not detract from the reasonableness of his actions. This case thus presents precisely the type of situation in which qualified immunity ought to apply.

On the basis of Cosgrove's unrebutted explanation regarding the facts and circumstances surrounding the implementation of the affirmative action program, no reasonable jury could find that his and Gaffney's actions were undertaken in bad faith or were without reasonable basis. Accordingly, judgment as a matter of law granting them qualified immunity from liability in their individual capacities under the Human Rights Law is appropriate. *See Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

For the foregoing reasons, the plaintiffs' motion for judgment as a matter of law that the defendants Gaffney and Cosgrove are individually liable on their state Human Rights Law claims is DENIED; the defendants' motion for judgment as a matter of law that the defendants Gaffney and Cosgrove enjoy absolute legislative immunity from liability on the plaintiffs' state Human Rights Law claims is GRANTED

as to Gaffney and DENIED as to Cosgrove; and the defendants' motion for judgment as a matter of law that the defendants Gaffney and Cosgrove enjoy qualified immunity from liability on the plaintiffs' state Human Rights Law claims is GRANTED as to both defendants.

The Clerk is directed to enter judgment in accordance with the jury's verdict and the above decision.