**Robert STEVENS, Plaintiff,**

v.

**The State of NEW YORK, et al., Defendants.**

**No. 09 Civ. 5237(CM).**

United States District Court, S.D. New York.

Nov. 23, 2009.

Robert Edward Wanker, Robert Wanker, Esq., Brooklyn, NY, for Plaintiff.

Steven Leon Banks, New York State Office of the Attorney General, New York, NY, for Defendants.

## DECISION AND ORDER DISMISSING THE COMPLAINT IN PART

McMAHON, District Judge.

### Introduction

Plaintiff Robert Stevens ("Stevens") brings this suit for damages and equitable relief against Defendants the State of New York, the New York State Office of the State Comptroller ("OSC"), Comptroller Thomas DiNapoli, Lynn Canton, Jackie Hawkins, Jay Canetto, Gregory Hurd, George King, Jerry Barber, Joan Williams, Stephen Lynch, Kenrick Sifontes, Robert Blot, Joseph Fiore, Martin Chauvin, and Randy Hotaling. The suit arises out of events that occurred during Stevens' employment by OSC, and the circumstances surrounding Stevens' termination from that position. Stevens asserts nine claims, brought against all defendants: (1) racial discrimination, in violation of Title VII of

the Civil Rights Act of 1964; (2) retaliation, in violation of Title VII of the Civil Rights Act of 1964 (collectively, "Title VII claims"); (3) violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1981 and § 1983 ("§ 1981" and "§ 1983" claims); (4) violation of the due process clauses of the Fifth and Fourteenth Amendments ("due process claims"); (5) violation of New York state ("NYSHR claim") and New York City ("NYCHR claim") anti-discrimination laws, specifically N.Y. Exec. Law § 296 and N.Y.C. Admin. Code § 8–107; (6) common-law wrongful termination ("wrongful termination claim"); (7) common-law defamation ("defamation claim"); (8) common-law intentional infliction of emotional distress ("IIED claim"); (9) common-law negligent infliction of emotional distress ("NIED claim").

Defendants Lynn Canton, Jackie Hawkins, Jay Canetto, Gregory Hurd, George King, Jerry Barber, Joan Williams, Stephen Lynch, Kenrick Sifontes, Robert Blot, Joseph Fiore, Martin Chauvin, and Randy Hotaling (the "Individual Defendants"), all of whom were sued both in their official and individual capacities, now move to dismiss (1) all claims against Canton, Hawkins, King, Blot, Fiore, Chauvin, and Hotaling in their individual capacities; (2) all claims for money damages against all individual defendants in their official capacities; (3) all claims under Title VII and common law claims against all individual defendants. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

## Background

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir.2003); *see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir.2007).

Stevens was hired by the OSC on or about May 3, 2007, as an auditor trainee. (Comp.¶¶ 17–18.) His duties consisted of working as part of a team to audit government-funded programs and entities. (*Id.* ¶ 18.)

At his first six-month performance evaluation, held on September 21, 2007, Stevens received a rating of "below performance standards" and was recommended for termination. (*Id.* ¶ 22.) He was described as insubordinate and unwilling to comply with OSC policy. (*Id.*) The only specific incident cited was Stevens' allegedly bringing a prohibited electronic device into a Department of Corrections facility. (*Id.* ¶ 23.)

Stevens enlisted the help of his union, and was reinstated to his position when it was determined that Stevens had not actually violated Department of Corrections policy. (*Id.* ¶ 24.) His performance review was amended to reflect that change. (*Id.*)

On May 1, 2008, Stevens met with defendant Lynch for his twelve-month review. (*Id.* ¶ 26.) At that meeting, Lynch reviewed Stevens' evaluation, which included a remark that Stevens "does not always take constructive criticism well." (*Id.*) Stevens denied the charge, and told Lynch that he may record conversations at work, to show that he was capable of accepting criticism. He took his evaluation and left the meeting. (*Id.* ¶¶ 27–29.) The evaluation was later revised to add an additional negative comment, presumably stemming from this behavior. (*Id.* ¶ 30.)

At some point in May 2008, Stevens was part of a team performing an audit for a charter school in Brooklyn. (*Id.* ¶ 31.) When Stevens voiced concerns about a lack of accountability in this and other

charter schools, his supervisor, defendant Williams, stated (in substance), "You are a white privileged man so you don't understand." (*Id.*) Later that day, when Stevens asked if he could open a window because he was warm, Williams said, "It must be a melanin thing." (*Id.* ¶ 32.)

The next day, Stevens spoke to the audit manager, defendant Sifontes, about the remarks made by Williams. When he said that he wished to make a formal complaint, Sifontes replied, "Don't go there." (*Id.* ¶ 34.)

On or about May 20, 2008, Stevens was called to a meeting with defendants Williams and Lynch regarding some alleged discrepancies on his time sheet. At this meeting, Stevens reported Williams' comments to Lynch. (*Id.* ¶ 35.) Williams admitted making the comments. (*Id.* ¶ 36.) Lynch told Stevens to send him an email about the conduct complained of, which Lynch would send along to the appropriate party. (*Id.* ¶ 37.) Stevens emailed Lynch on some unspecified date. (*Id.* ¶ 38.)

On May 30, 2008, defendant Blot advised Stevens that he was being placed on administrative leave. (*Id.* ¶ 39.) Blot did not tell Stevens why this action was being taken.

That night, defendant Fiore contacted Stevens and asked to meet plaintiff in his hometown of Bay Ridge. Fiore told Stevens that he would let him know the reason he had been placed on leave. (*Id.* ¶¶ 40–41.) The meeting took place in a local Starbucks, and was attended by Stevens, Fiore, and three other unidentified men. (*Id.* ¶ 42.) Fiore told Stevens that a co-worker reported hearing Stevens threaten to shoot another employee. Fiore did not identify either the accuser or the person who supposedly was threatened, (*Id.* ¶¶ 43, 47.)

Stevens attended a meeting on June 9, 2009, with defendants Lynch, Hurd, and Hotaling. (*Id.* ¶ 48.) Although defendant Chauvin summoned Stevens to this meeting, he apparently did not attend. (*Id.*) Stevens brought his union representative, John Lang, to the meeting, but Lang was not permitted to sit in on the meeting. (*Id.*)

At this meeting, Stevens was given another performance evaluation, covering the time period from 11/3/2007 through 6/6/08. (*Id.* ¶¶ 49–5.) Stevens found this strange, since he had recently received an evaluation covering the time period 11/3/07 to 5/3/08; evaluations were usually conducted every six months. (*Id.* ¶¶ 49, 51.)

The new evaluation stated that Stevens did not get along well with co-workers and referred to specific incidents to demonstrate as much. (*Id.* ¶ 50.) The evaluation recommended that Stevens be terminated. (*Id.*) The prior evaluation, received only weeks earlier, did not reference those incidents, and did not recommend termination.

Stevens was fired that same day; it is unclear whether this occurred at the meeting or later. (*Id.* ¶ 54.) At some point, Stevens' complaint about Williams' remarks was deemed substantiated, and Stevens was told by defendant Barber that Williams was "counseled" and a record of the incident placed in her file. (*Id.* ¶ 53.)

Stevens filed a charged of discrimination with the Equal Employment Opportunity Commission. He received a right to sue letter on September 26, 2008, and brought this action within 90 days thereafter. (*Id.* ¶ 57.)

## Discussion

### A. STANDARD FOR MOTION TO DISMISS

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual alle-

gations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG,* 352 F.3d at 44; *see also Roth,* 489 F.3d at 510.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570, 127 S.Ct. 1955; *Iqbal,* 129 S.Ct. at 1950–51.

**B. PLAINTIFF'S TITLE VII, DUE PROCESS, AND NIED CLAIMS ARE DISMISSED AGAINST ALL INDIVIDUAL DEFENDANTS**

The Individual Defendants move to dismiss Stevens' Title VII claims, due process claims, and NIED claim. Plaintiff wisely concedes that these claims should be dismissed.

■ It is settled law in this Circuit that individuals are not subject to liability under Title VII. *Sassaman v. Gamache,* 566 F.3d 307, 315–15 (2d Cir.2009); *Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir.2004); *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995) *abrogated on other grounds, Burlington Ind., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ As for the due process claims, Stevens did not avail himself of adequate post-deprivation remedies under state law. Due process is not violated when the state provides an adequate post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 531–33, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Hellenic American Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996). Even assuming Stevens had a property interest in his employment, a proceeding under Article 78 challenging the termination of his employment offered him an adequate post-deprivation remedy. *See Vargas v. City of New York,* 377 F.3d 200, 208 (2d Cir.2004) (police officer terminated for excessive force had no due process claim because an Article 78 proceeding provided a meaningful remedy).

■ Finally, in New York a plaintiff cannot bring a claim of negligent infliction of emotional distress against his employer, as the New York Workers' Compensation Law provides the exclusive remedy for negligence claims against an employer. *See* N.Y. Workers' Comp. Law § 29(6); *Gabel v. Richards Spears Kibbe & Orbe, LLP,* 615 F.Supp.2d 241, 243 (S.D.N.Y. 2009); *Thomas v. Northeast Theatre Corp.,* 51 A.D.3d 588, 859 N.Y.S.2d 415, 417 (1st Dept.2008).

**C. PLAINTIFF'S CLAIMS FOR MONEY DAMAGES AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE DISMISSED**

The individual defendants have moved to dismiss all claims for money damages as-

serted against them in their official capacities, arguing that these claims are barred by the Eleventh Amendment.

■ They do not seek dismissal of any claim for damages brought against them in their individual capacities, nor do they seek dismissal of any claim for injunctive relief. This is because the Eleventh Amendment does not bar suits against state officials in their individual capacities, *see Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("As to a claim brought against [the state official] in his individual capacity ... the state official has no Eleventh Amendment immunity."), or suits for prospective, injunctive relief against defendants in their individual or official capacities. *See Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (*citing Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). The individual defendants have not moved to dismiss any claims on either of those two issues.

■ However, plaintiff's claims for damages against the individual defendants in their official capacities is predicated on a misinterpretation of the Supreme Court's holding in *Young. Young* stands only for the proposition that the Eleventh Amendment does not bar suits alleging an ongoing violation of federal law and seeking prospective (i.e., injunctive) relief, brought against state officials in their official capacities. *See Verizon,* 535 U.S. at 645, 122 S.Ct. 1753. In numerous cases it has been held that the Eleventh Amendment bars suits for monetary relief against state officials in their official capacities. *See e.g. Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ward v. Thomas,* 207 F.3d 114, 119 (2d Cir.2000) ("suits against states and their officials seeking damages for past injuries are firm-

ly foreclosed by the Eleventh Amendment").

Plaintiff does not specify in his Complaint what kind of relief he seeks for each of his asserted claims. However, to the extent that he seeks money damages against any individual defendant in his official capacity, the claim is barred by the Eleventh Amendment and is dismissed.

## D. PLAINTIFF'S WRONGFUL TERMINATION CLAIMS ARE DISMISSED AGAINST ALL INDIVIDUAL DEFENDANTS

■ Plaintiff asserts a claim for wrongful termination in his complaint. Unfortunately for him, "New York law does not recognize causes of action for wrongful termination for employees at will." *Howard v. Klynveld Peat Marwick Goerdeler,* 173 F.3d 844 (2d Cir.1999) (unpublished table decision); *see also Lobosco v. New York Tel. Co./NYNEX,* 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 (N.Y. 2001).

Plaintiff argues that New York courts are moving away from this bright-line rule, specifically with regard to terminations that occur in contravention of public policy. However, wishing something to be the case does not make it so. Plaintiff has cited no authority for this argument, and the most recent New York Court of Appeals cases on the matter state exactly the opposite. *Horn v. New York Times,* 100 N.Y.2d 85, 96, 760 N.Y.S.2d 378, 790 N.E.2d 753 (N.Y. 2003) ("We have consistently declined to create a common-law tort of wrongful or abusive discharge ... and we again decline to do so."); *Lobosco,* 96 N.Y.2d at 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 ("New York does not recognize the tort of wrongful discharge. Furthermore, there is no exception for firings that violate public policy.") (internal citations omitted). There-

fore, Stevens' wrongful termination claims are dismissed against all defendants.

### E. PLAINTIFF'S IIED CLAIMS

Stevens asserts a claim for intentional infliction of emotional distress against all defendants. The complaint fails to state a cause of action against all individual defendants, and this claim is dismissed.

 "Under New York law, a claim of intentional infliction of emotional distress requires: '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'" *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir.2001) (*quoting Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)). "As New York's highest court has observed, the standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Id.* (*quoting Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (N.Y.1993)). "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (*quoting Stuto*, 164 F.3d at 827).

 As a matter of law, none of the individual defendants' alleged conduct was so extreme and outrageous as to support a claim for IIED. Stevens has not alleged any specific conduct by any of the individual defendants (except, possibly, Williams) that would even come close to supporting such a claim. The majority of the individual defendants are accused only of participating in some way in Stevens' termination. "New York Courts are reluctant to allow [IIED] claims in employment discrimination cases. The courts are wary of

allowing plaintiffs to recharacterize claims for wrongful or abusive discharge . . . as claims for intentional infliction of emotional distress." *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001).

As for defendant Williams, Stevens' allegation that she made two racially insensitive remarks to him does not give rise to a claim for IIED. *See id.* ("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous.").

### F. PLAINTIFF'S DEFAMATION CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE DISMISSED

It is not entirely clear from the Complaint whether Stevens is asserting a defamation claim only against the 'John Doe 1' who allegedly made a false statement about him, or if he is asserting defamation claims against all defendants. See Comp. ¶ 72 ("Upon information and belief, the remaining Defendants aided and abetted in the aforestated defamation by supporting it, encouraging it, and knowingly relying upon said false statements to Plaintiff's detriment."). To the extent Stevens is asserting a defamation claim against the individual defendants, such a claim must be dismissed. Plaintiff's bare allegations that the individual defendants supported, encouraged, and relied on the alleged false statements, without more, do not meet the pleading threshold imposed by *Iqbal* and *Twombly*. Stevens does not assert facts from which it can be fairly inferred that any individual defendant uttered any defamatory comments about him. For that reason, the defamation claims against the

individual defendants must be dismissed. *Iqbal,* 129 S.Ct. at 1949.

## G. PLAINTIFF'S § 1981, § 1983, NYSHR AND NYCHR CLAIMS AGAINST DEFENDANTS CANTON, HAWKINGS, BLOT, FIORE, CHAUVIN, AND TOTALING ARE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT

Plaintiff's remaining claims against the individual defendants are his § 1981 and § 1983 claims, his NYSHR claims, and his NYCHR claims against the individual defendants in their individual capacities. Defendants Canton, Hawkins, King, Blot, Fiore, Chauvin, and Hotaling move to dismiss these claims for lack of personal involvement.

■■■ It is well settled law in this Circuit that, "Personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983." *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). To the extent that officials are sued in their individual capacities, a claim will fail under 42 U.S.C § 1983 if there are no allegations of personal involvement. *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060 (2d Cir.1989). While asserting a claim against an employee in his or her official capacity is equivalent to asserting a claim against the municipality itself, individual liability under federal law depends on the level of personal involvement and cannot attach under traditional notions of *respondeat superior. Id.; see also Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■■■ Supervisors can be sued individually without direct participation only if they promulgated unconstitutional policies or plans under which action occurred, or otherwise authorized or approved challenged misconduct. *Al–Jundi,* 885 F.2d at 1066; *see also, Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986). To lay a proper foundation for individual liability, the plaintiff must plead "specific, nonconclusory factual allegations" to establish the participation at the necessary mental state of the individual defendants, or his claims against them will be dismissed. *Blue v. Koren,* 72 F.3d 1075, 1083–84 (2d Cir. 1995).

■■■ Unlike claims under Title VII, claims of discrimination in violation of § 1981 can be brought against individuals. *Whidbee v. Garzarelli Food Specialties. Inc.,* 223 F.3d 62, 74 (2d Cir.2000). In order to hold an individual liable under § 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action. A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Id. (internal citations omitted ).*

■■■ In addition, as is the case with § 1983, claims against a municipality (including claims against individuals in their official capacities) can only be asserted if plaintiff shows the challenged acts were performed pursuant to a municipal policy or custom. *Jett v. Dallas Independent School District,* 491 U.S. 701, 733–36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 226 (2d Cir.2004).

■■■ Claims of discrimination in violation of New York's Human Rights Law can also be brought against individuals. N.Y. Exec. Law § 296; *Tomka,* 66 F.3d at 1317. Under this provision, an individual can be liable if he has an "ownership interest or ... power to do more than carry out

personnel decisions made by others," or if he "actually participates in the conduct giving rise to a discrimination claim." *Tomka,* 66 F.3d at 1317. Clearly, none of the individual defendants could have an ownership interest in a state agency. Stevens has not alleged that any of the individual defendants had the power to hire or fire him on their own. Therefore, any individual liability under the NYSHR hinges on whether the accused actually participated in the alleged discriminatory conduct.

Likewise, the New York City Human Rights Law also contains an aiding and abetting provision. N.Y.C. Admin. Code § 8–107(6). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." *Feingold v. New York,* 366 F.3d 138, 158 (2d Cir.2004).

■ Therefore, Stevens must assert personal involvement of each of the individual defendants in order to proceed with claims based on § 1981, § 1983, the NYSHR law, and the NYCHR law. He clearly has not done so with respect to defendants Canton and Hawkins. The only involvement Stevens asserts against those two defendants is that, by virtue of their supervisory positions, they "must have" approved any disciplinary actions taken against Stevens. These conclusory allegations are not sufficient to state a claim for relief. All remaining claims are dismissed against those two defendants.

■ Likewise, Stevens has not asserted that defendant Blot was personally involved in any of the allegedly discriminatory actions. According to the Complaint, Blot "operated indirectly in a supervisory capacity" over Stevens, and it was Blot who contacted Stevens to inform him he was being placed on administrative leave.

There are no factual allegations that Blot actually participated in any discriminatory actions, or in Stevens' termination; therefore, the remaining claims are also dismissed against defendant Blot.

As to defendant Fiore, his only alleged involvement in this saga was the meeting in Bay Ridge, where Fiore allegedly told Stevens why he had been placed on administrative leave. This does not fairly admit of an inference that Fiore participated in any discriminatory action against plaintiff. As Stevens has not alleged that Fiore was in any way involved in discriminatory actions, all remaining claims against Fiore are dismissed.

■ Stevens asserts that defendant Chauvin summoned him to the June 9, 2008, meeting, where he was terminated. Stevens also asserts that defendant Hotaling was present at the June 9 meeting. While plaintiff has not directly alleged that either Chauvin or Hotaling participated in any discriminatory actions towards him, his allegations that they were at least in some way directly involved in his termination are sufficient to allow his claims against them to survive the motion to dismiss stage. Therefore, Stevens' § 1981 and § 1983, NYSHR, and NYCHR claims against defendants Chauvin and Hotaling are not dismissed at this time.

■ Finally, Stevens asserts that defendant King—the Inspector General within OSC—ignored his letter detailing his plight prior to his termination, and despite a phone conversation with plaintiff and the subsequent receipt of supporting documentation, took no action against anyone after plaintiff's termination. Stevens does not outline in his Complaint exactly what it is the Inspector General does at OSC—that is, Stevens does not state what action he believes the Inspector General should have taken in accordance with his role at OSC.

However, drawing all reasonable inferences in plaintiff's favor—as is appropriate at the motion to dismiss stage, *see Cargo Partner AG*, 352 F.3d at 44 it is reasonable to infer that King had some sort of authority to correct or alter the actions taken against Stevens. The Second Circuit has stated that one of the ways in which a supervisory official can be personally involved in a constitutional deprivation is when "after being informed of the violation through a report or appeal, [the official] failed to remedy the wrong." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (*citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)). Stevens has alleged that he contacted King via certified mail, that he spoke with King on the telephone, and that he complied with King's request for supporting documentation and contact information for Stevens' counsel, and that nonetheless, King did nothing. Assuming that all allegations in the Complaint are true, this is sufficient to state a cause of action. Therefore, Stevens' § 1981 and § 1983, NYSHR, and NYCHR claims against defendant King are not dismissed at this time.

## Conclusion

For the foregoing reasons, the following claims are dismissed: (1) all claims for money damages against all individual defendants in their official capacities; (2) all claims under Title VII and all common law claims against all individual defendants; (3) all remaining claims against defendants Canton, Hawkins, Blot, and Fiore in their individual capacities. The following claims are not dismissed: (1) all claims for injunctive relief against all individual defendants in their official capacities; (2) claims under § 1981, § 1983, § 296 of the NYHRL, and § 8–107 of the NYCHRL against defendants Canetto, Hurd, King, Barber, Williams, Lynch, Sifontes, Chauvin and Hotaling in their individual capacities.

This constitutes the decision and order of the Court.