Mahoney v City of Albany (2022 NY Slip Op 07288)

Mahoney v City of Albany

2022 NY Slip Op 07288

Decided on December 22, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 22, 2022

534635
[*1]Dawn Mahoney, Respondent,
v
City of Albany et al., Appellants.

Calendar Date:November 22, 2022

Before:Lynch, J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

The Rehfuss Law Firm, PC, Latham (Stephen J. Rehfuss of counsel), for appellants.
Finn Law, Albany (Ryan M. Finn of counsel), for respondent.

Lynch, J.P.
Appeal from an order of the Supreme Court (Christina L. Ryba, J.), entered November 23, 2021 in Albany County, which, upon reargument, adhered to its prior decision partially denying defendants' motion for summary judgment dismissing the complaint.
From 1999 until 2017, plaintiff was a civilian dispatcher employed by defendant City of Albany in the communications center of the Albany Police Department (hereinafter APD). In 2013, plaintiff voluntarily accepted a demotion to transfer to the "B shift" — i.e., the day shift — where she worked alongside defendant John Tierney, a civilian senior dispatcher who, owing to his seniority, occasionally exercised supervisory responsibilities over plaintiff. On September 19, 2015, plaintiff reported to Charles Barthe, a shift supervisor, that Tierney made inappropriate comments about her appearance and that she observed Tierney watching a movie depicting sexual content while on duty. The Office of Professional Standards (hereinafter OPS), a unit of APD, investigated plaintiff's complaint, during which Tierney was suspended without pay for 30 days. In addition to plaintiff and Tierney, OPS officers interviewed plaintiff's coworkers, including defendant Mark Seymour, a shift supervisor until demoted in 2014 or 2015 to dispatcher; defendant Kenneth Marks, a senior dispatcher assigned to B shift; and defendant Joseph Carnevali, the APD lieutenant in charge of the communications center. At the conclusion of the investigation, Tierney was reinstated with backpay.
Plaintiff commenced this action in November 2016 pursuant to 42 USC § 1983 and the Human Rights Law (see Executive Law art 15), alleging claims of hostile work environment, adverse employment actions and retaliation. Defendants joined issue and, after discovery, moved for summary judgment dismissing the complaint. Supreme Court partially granted the motion and dismissed plaintiff's adverse employment action and retaliation claims. The court declined to dismiss the hostile work environment claims, finding questions of fact remained as to whether and to what degree each individual defendant was liable therefor. Defendants then moved to reargue, seeking a decision on several of their arguments advanced during motion practice but not passed upon. Supreme Court granted reargument on the individual defendants' claims of qualified immunity but found questions of fact precluded dismissal of the complaint on that basis. The court therefore adhered to its prior decision partially denying defendants' summary judgment motion. Defendants' appeal.
It is well established that the Equal Protection Clause of the US Constitution and the Human Rights Law of this state secure the right to be free of a gender-hostile work environment in public employment (see Executive Law § 296 [1] [h]; Kern v City of Rochester, 93 F3d 38, 43 [2d Cir 1996], cert denied 520 US 1155 [1997]; Burhans v Lopez, 24 F Supp 3d 375, 380 [SD NY 2014]; Golston-Green v City of New York, 184 AD3d 24, [*2]41 [2d Dept 2020]). Correspondingly, individual defendants may be held liable under the federal civil rights statute and the Human Rights Law for conduct creating such a hostile work environment (see 42 USC § 1983; Executive Law § 296 [6]).
Both federal and state law recognize the doctrine of qualified immunity, which shields public officials from damages liability arising from the performance of their duties. In the federal context, public officials may invoke qualified immunity under 42 USC § 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time" (Relf v City of Troy, 169 AD3d 1223, 1225 [3d Dept 2019] [internal quotation marks and citations omitted]). With respect to the second prong, it has long been established that "[p]ublic employees have a clear right, protected by the Fourteenth Amendment, to be free from discrimination on the basis of sex in public employment" (Raspardo v Carlone, 770 F3d 97, 114 [2d Cir 2014] [internal quotation marks and citations omitted]). Thus, on a motion for summary judgment seeking dismissal based on qualified immunity, the evaluation of the first prong is, essentially, an evaluation of the merits of the underlying claim (see id. at 113).
Hostile work environment claims under 42 USC § 1983 require a showing that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 310 [2004] [internal quotation marks and citation omitted]; accord Golston-Green v City of New York, 184 AD3d at 41). The acts must be alleged to have occurred because of gender and under color of state law (see 42 USC § 1983; Kennedy v New York, 167 F Supp 3d 451, 460 [WD NY 2016]). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive" (Raspardo v Carlone, 770 F3d at 114 [internal quotation marks and citation omitted]). "There is no mathematically precise test" for making this assessment (id. [internal quotation marks and citation omitted]). "Instead, courts must assess the totality of the circumstances, considering elements such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" (id. [internal quotation marks and citation omitted]).
In the 42 USC § 1983 context, liability of an individual defendant is based on his or her "personal involvement in the alleged constitutional deprivation" (Grullon v City of New Haven, 720 F3d 133, 138 [2d Cir 2013]). Individual defendant liability only attaches when his or her own conduct is sufficiently severe and pervasive to create the hostile [*3]work environment; otherwise, that defendant is protected by qualified immunity (see Raspardo v Carlone, 770 F3d at 115). Correspondingly, "liability for supervisory government officials cannot be premised on a theory of respondeat superior because [42 USC] § 1983 requires individual personalized liability on the part of each government defendant" (id. at 116). Although the precise "contours of the supervisor liability test" remain to be determined (id. at 117), personal involvement "may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [a plaintiff] by failing to act on information indicating that unconstitutional acts were occurring" (id. at 116, quoting Colon v Coughlin, 58 F3d 865, 873 [2d Cir 1995]; see Grullon v City of New Haven, 720 F3d at 139).
Under state law, public officials are protected by qualified immunity for discretionary acts that are unlawful under the Human Rights Law unless "they are undertaken in bad faith or without reasonable basis" (Hiller v County of Suffolk, 81 F Supp 2d 420, 423 [ED NY 2000]; see Dawson v County of Westchester, 351 F Supp 2d 176, 199-200 [SD NY 2004]; see generally Arteaga v State of New York, 72 NY2d 212, 216-217 [1988]). Hostile work environment claims under the Human Rights Law are evaluated under the same severe-or-pervasive standard as a claim brought pursuant to 42 USC § 1983 (see Golston-Green v City of New York, 184 AD3d at 41; Reynolds v State of New York, 180 AD3d 1116, 1117-1118 [3d Dept 2020]). Further, the Human Rights Law provides that it "shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the Human Rights Law], or to attempt to do so" (Executive Law § 296 [6]), including harassment based on sex or gender identity or expression (see Executive Law § 296 [1] [h]). "[A]n individual defendant may be held liable under the aiding and abetting provision of the [Human Rights Law] if he [or she] actually participates in the conduct giving rise to a discrimination claim" (Rojas v Roman Catholic Diocese of Rochester, 660 F3d 98, 107 n 10 [2d Cir 2011] [internal quotation marks and citation omitted], cert denied 565 US 1260 [2012]). Similarly, "[a] supervisor is an employer for purposes of establishing liability under the [Human Rights Law] if that supervisor actually participates in the conduct giving rise to the discrimination" (Feingold v New York, 366 F3d 138, 157 [2d Cir 2004] [internal quotation marks, brackets and citation [*4]omitted]).
As provided in APD's general order dated November 19, 2014, sexual harassment includes "[u]nwelcomed sexual advances, request for sexual favors or other verbal or physical conduct of a sexual nature; . . . [m]aking jokes or comments of a sexual nature, and making sexual comments or requests in a joking or demeaning manner; . . . [c]ommenting on a person's body or appearance, commenting on the bodies or appearance of other people, or the use of obscene language in a manner that is offensive to a co-worker who can hear you; and . . . [d]isplaying obscene, nude or pornographic photographs, pictures, magazines, art or other similar materials which may create a hostile work environment." The policy encourages employees who believe that they have been subjected to harassment to submit a written complaint. Further, the policy states, "Supervisory personnel and department heads are responsible for ensuring a workplace free from harassment. Department heads and supervisors must take immediate corrective action when allegations of harassment come to their attention and otherwise ensure compliance with this policy."
Given this framework, we begin with Tierney's claim of qualified immunity. According to plaintiff, Tierney made sexually inappropriate comments about her appearance for the "whole time" between her transfer to B shift in 2013 and the OPS investigation in 2015. Plaintiff recounted several specific examples and estimated that they occurred on almost every shift she worked with Tierney, occasionally multiple times per shift, totaling between 80 to 100 instances in that two-year period. In plaintiff's telling, Tierney made "a lot of comments about women in a sexual nature" — "whether they were on TV or walking past the building or the girl working at Stewart's." Although plaintiff could not recall all of Tierney's specific comments, she pointed to seven specific episodes of inappropriate sexual commentary which, for his part, Tierney disputed.
Viewing the evidence in a light most favorable to plaintiff, as required on defendants' motion for summary judgment (see Raspardo v Carlone, 770 F3d at 113), we conclude that the events described by plaintiff, which at one point caused her to alter the way she dressed at work, together with her testimony that Tierney made up to 100 sexual comments about her and other women in a two-year period, constitute the type of severe and pervasive conduct required for a hostile work environment claim (compare Cowan v City of Mount Vernon, 95 F Supp 3d 624, 643-644 [SD NY 2015]; Minckler v United Parcel Serv., Inc., 132 AD3d 1186, 1188-1189 [3d Dept 2015]). Because questions of fact remain as to whether Tierney violated plaintiff's equal protection right to a harassment-free workplace in public employment, Supreme Court appropriately declined to dismiss the 42 USC § 1983 claim against him based on qualified immunity (see Raspardo v Carlone, 770 F3d at 113-114). Similarly, defendants have not shown that Tierney's [*5]alleged conduct was "discretionary in nature, involving the exercise of reasoned judgment" so as to fall within the ambit of the state's qualified immunity doctrine (Dawson v County of Westchester, 351 F Supp 2d at 200; see Mon v City of New York, 78 NY2d 309, 313 [1991]), thus precluding dismissal of the Human Rights Law cause of action against Tierney.[FN1]
As to Carnevali, Seymour and Marks, the thrust of plaintiff's hostile work environment claims against them is that, as supervisors, they were aware of Tierney's conduct and failed to take appropriate action (see Raspardo v Carlone, 770 F3d at 116; Grullon v City of New Haven, 720 F3d at 139). Plaintiff also stated that one or more of the three remaining individual defendants may have witnessed Tierney's "dozens" of sexually harassing comments between 2013 and 2015, but she could not recall specifics of those incidents — that is, she could not describe what the supervisor defendants witnessed that required them to act.
Only Seymour was identified by plaintiff as having direct knowledge of one of the principal events. In October or November 2013, Tierney allegedly made a sexual comment about plaintiff during roll call in front of her and their coworkers. Plaintiff complained to Seymour, the supervisor that day, reporting that Tierney had made similar comments repeatedly. Seymour purportedly said he would speak to Tierney and plaintiff maintains that he failed to do so. In his own deposition, Seymour could not recall this event, or any instance when Tierney made inappropriate comments about plaintiff or other women.
Plaintiff's specific allegations against Marks and Carnevali concern events that occurred during and after the OPS investigation. Plaintiff testified that she received unfair treatment from Marks when she requested to leave work to make her son a different lunch for school. Marks, the acting supervisor for that day, granted the request but plaintiff thought that he gave her a harder time than others making similar requests. A coworker later informed plaintiff that, while she was out of the office, Marks went to her workstation and looked through the paperwork on her desk. Plaintiff complained to Carnevali, who told her that Marks can do what he wants and that she was lucky she could leave at all and to have a job.
Plaintiff also reported that her usual work chair was intentionally broken. Plaintiff testified that, when she voiced concerns about retaliation to Marks and Carnevali, Marks told her that such treatment toward her by coworkers was a "knee-jerk reaction" apparently in response to her complaint against Tierney.
Plaintiff further explained that, although OPS had directed that plaintiff and Tierney should not work in the same room or be partnered together, on his first day back at work after his suspension, Tierney worked as acting supervisor of plaintiff's shift. Carnevali corroborated this assignment in his own deposition, explaining that, because plaintiff's allegations [*6]were not substantiated by OPS, there was no basis to prevent him from assuming the active supervisor role when he was the most senior dispatcher on duty, consistent with established practice.[FN2] That explanation, however, disregards the directive from OPS.
Like Seymour, both Marks and Carnevali denied ever hearing Tierney make sexual comments about plaintiff or any other woman. Otherwise, their testimony tracks plaintiff's account. For example, Marks confirmed that Carnevali told plaintiff in their meeting that she was lucky to have a job, though he did not believe the statement was in response to the OPS complaint. Marks also explained that when he was seen at plaintiff's workstation, he was reviewing a call she had taken that he believed took "an inordinate amount of time."
Carnevali, who began overseeing communications in 2014, testified that he did not recall anyone, including plaintiff, complaining to him about Tierney prior to the OPS investigation. He also denied that plaintiff was treated harshly or unfairly when she requested to leave work. Instead, Carnevali offered that plaintiff's request to leave work was not an emergency and would result in at least one hour's absence — 30 minutes longer than her allotted lunch break. When asked how plaintiff's coworkers acted around plaintiff, Carnevali confirmed that they were "nervous." In response to plaintiff's allegation that she had been repeatedly assigned to a certain stressful workstation that would ordinarily be rotated, Carnevali explained that plaintiff preferred that assignment.
With the foregoing in mind, we conclude that Seymour, Marks and Carnevali are shielded by qualified immunity with respect to plaintiff's federal cause of action, as none of their individual actions created a hostile work environment in violation of plaintiff's equal protection rights (compare Burhans v Lopez, 24 F Supp 3d at 383; cf. Tangreti v Bachmann, 983 F3d 609, 619 [2d Cir 2020]).[FN3] Relevantly, the proof demonstrates that none of those three remaining defendants held supervisory authority during the whole time in question: Seymour ceased being a supervisor in 2014 or 2015, Carnevali took over as the lieutenant in charge of communications in 2014, and Marks was a senior dispatcher assigned to B shift during all relevant times, but he testified without contradiction that he was not working when several of the specific events recounted by plaintiff occurred. Although individual liability under 42 USC § 1983 may flow from a supervisor's inaction in the face of known harassment (see Stevens v New York, 691 F Supp 2d 392, 402 [SD NY 2009]), the alleged individual inaction on the part of Seymour, Marks and Carnevali did not suffice to create the hostile work environment (see Raspardo v Carlone, 770 F3d at 115), thus failing the first prong of the federal qualified immunity test (see Relf v City of Troy, 169 AD3d at 1225). As such, Supreme Court should have dismissed plaintiff's federal cause of action against [*7]Seymour, Marks and Carnevali.
We reach the same conclusion as to plaintiff's cause of action against Seymour, Marks and Carnevali under the Human Rights Law, pursuant to which supervisors may be held individually liable to the extent that they aided and abetted conduct creating a hostile work environment (see Executive Law § 296 [6]). We note at the outset that, contrary to plaintiff's contentions, defendants' unrebutted proof established that Seymour, Marks and Carnevali did not actively participate in the conduct creating the hostile work environment as required under the aiding-and-abetting provision (see Kennedy v New York, 167 F Supp 3d at 465; Stevens v New York, 691 F Supp 2d at 401).
Even if plaintiff's Human Rights Law claim against them could proceed under a supervisory inaction theory, we would conclude that they are shielded by qualified immunity. APD's sexual harassment policy demonstrates that, outside of an official report, there appears to have been supervisory discretion in counseling or disciplining subordinates for harassing conduct. Apart from the roll call event, none of the individual defendants or plaintiff could recall particular comments that would have required the intervention of any supervisor allegedly present to hear it. The one roll call incident, in which Seymour ostensibly agreed to speak with Tierney, falls short in establishing a viable claim. As such, we conclude that the supervisor defendants met their burden to demonstrate a lack of unreasonableness and bad faith (see Hiller v County of Suffolk, 81 F Supp 2d at 423-424; compare Dawson v County of Westchester, 351 F Supp 2d at 200).
Clark, Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as adhered to Supreme Court's prior order denying summary judgment dismissing the complaint against defendants Mark Seymour, Kenneth Marks and Joseph Carnevali; motion granted to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: There is no argument raised on this appeal that Tierney is not subject to individual liability because he does not qualify as an employer under the Human Rights Law (see Matusick v Erie County Water Auth., 757 F3d 31, 53 [2d Cir 2014]).

Footnote 2: The OPS investigation report contained in the record summarizes the officers' interviews with plaintiff, Tierney, Carnevali and other witnesses. OPS's ultimate findings and recommendation are redacted.

Footnote 3: Most of plaintiff's specific allegations against Marks and Carnevali sound in retaliation (see Executive Law § 296 [7]). Supreme Court dismissed that theory of liability, and such dismissal is unchallenged on this appeal.