OPINION OF THE COURT
Hancock, Jr., J.
Defendant Shankman, then a probationary police officer, *311 fired his revolver and injured both plaintiffs in attempting to apprehend them. A judgment was recovered against the City of New York for personal injuries and false arrest based on this incident. The ground for the personal injury recoveries was the allegedly negligent hiring of Shankman. In the City’s appeal from a unanimous affirmance of the judgment at the Appellate Division, the principal question is whether the City has governmental immunity from liability for negligence in hiring.
We hold that (1) the duties and functions of the officials who made the hiring decisions entail such discretion as would entitle the City to the protection of governmental immunity, and (2) because the decisions were made in the exercise of that discretion, they cannot result in the City’s liability. Accordingly, to the extent that the judgment represents recoveries for personal injury, there should be a reversal. Since there was no exception to the trial court’s submission of the false arrest claims to the jury, no legal issue with respect to those claims is preserved for our review. Therefore, as to that portion of the judgment, there should be an affirmance.
I
The lawsuit arises out of events which occurred in The Bronx on August 21, 1982 near the intersection of Brady and Holland Avenues following an altercation between defendant Shankman and plaintiffs, Andre Mon and his brother, Rodney Mon. Shankman, a recently appointed police officer, while off-duty, shot his service revolver twice, hitting both plaintiffs and injuring Andre Mon seriously. Plaintiffs were arrested but all charges against Andre Mon were dismissed and the charge against Rodney Mon resulted in acquittal. Their damage claims against the City for false arrest and for personal injuries on the theory of negligent hiring were tried together before a jury.
The jury awarded damages for false arrest against the City to Andre Mon, only. In submitting the case to the jury, the court charged, without objection, that if the jury found that the City, by its positive actions following the incident, had ratified defendant Shankman’s conduct in making the arrest it could bring in a verdict against the City. In an answer to one of several intérrogatories, the jury specifically found that the City had ratified Shankman’s arrest of Andre Mon. In *312 exercising our limited review of this issue we conclude that the Appellate Division properly held that there was sufficient evidence in the record for submission of the ratification question to the jury. Further discussion of the false arrest claim is unwarranted.
Nor is it necessary to detail the facts surrounding the shooting incident. Suffice it to say, we find more than enough evidence in the record for the jury to have concluded that Shankman’s behavior was not acceptable police conduct and to support its findings, in answers to other special questions, that he was not justified in shooting either plaintiff. A discussion of the City’s claim of immunity from liability for negligent hiring, however, requires a brief summary of the facts surrounding Shankman’s appointment as a police officer.
In October 1981, Shankman applied for appointment to the New York City Police Department. In his original application, he omitted a 1979 arrest involving his participation in an incident at a Rite-Aid drugstore and his previous employment at that store. The incident, which involved damage to equipment in the store from a shot fired by Shankman’s companion, resulted in Shankman’s conviction for disorderly conduct on his plea of guilty. Police Investigator Kelly who investigated Shankman’s family, education, military and employment background, found nothing unfavorable. Notwithstanding the 1979 arrest and the arresting officer’s strenuous objection to Shankman’s application, Officer Kelly, based on his review of the entire applicant file, recommended Shankman’s approval and forwarded his recommendation and the file to Lieutenant Springer for his action. Upon his review of the applicant’s file, Lieutenant Springer approved Shankman’s appointment.
At the conclusion of all the evidence, the City renewed the motion it had reserved at the close of plaintiffs’ case to dismiss the negligent hiring claims, without submissions to the jury, for failure to establish a prima facie case, citing, inter alia, Haddock v City of New York (140 AD2d 91) and McCrink v City of New York (296 NY 99). The court reserved decision on the City’s dismissal motion until after the jury’s verdict and denied that motion as well as the City’s postverdict motion under CPLR 4404 (a). In the appeal here, the central focus is whether the City may claim governmental immunity for the hiring decisions of its servants in light of our decision in Haddock v City of New York (75 NY2d 478). For reasons to be stated, we hold that under the rationale of Haddock and our *313 prior decisions on governmental immunity (see, e.g., Arteaga v State of New York, 72 NY2d 212; Tarter v State of New York, 68 NY2d 511; and Tango v Tulevech, 61 NY2d 34) the negligent hiring causes of action should have been dismissed as a matter of law either before submission to the jury or on the Court’s reserved decision after the verdict was returned.
II
Whether an action of a governmental employee or official is cloaked with any governmental immunity requires an analysis of the functions and duties of the actor’s particular position and whether they inherently entail the exercise of some discretion and judgment (see, Arteaga v State of New York, supra, at 216; Tarter v State of New York, supra, at 518-519). If these functions and duties are essentially clerical or routine, no immunity will attach (see, Tango v Tulevech, supra, at 40-42). As we stated in Haddock v City of New York (supra):
"[W]hen official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action (see, Tango v Tulevech, 61 NY2d 34, 40; Arteaga v State of New York, 72 NY2d 212, 216; Weiss v Fote, 7 NY2d 579). Whether absolute or qualified, this immunity reflects a value judgment that — despite injury to a member of the public — the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury.” (Id., at 484.)
If a functional analysis of the actor’s position shows that it is sufficiently discretionary in nature to warrant immunity, it must then be determined whether the conduct giving rise to the claim is related to an exercise of that discretion. Obviously, governmental immunity does not attach to every action of an official having discretionary duties but only to those involving an exercise of that discretion (see, Haddock v City of New York, 75 NY2d 478, 484-485, supra).
In determining whether plaintiff’s negligent hiring claims must fail because of the City’s governmental immunity, we *314 look first at the functions and duties of Investigator Kelly and Lieutenant Springer, the two police officers responsible for hiring Shankman. Unquestionably, the responsibilities of Officers Kelly and Springer for investigating and evaluating the background and qualifications of police officer candidates and making the recommendations and final decisions for such appointments entailed the exercise of some judgment and discretion. We have no difficulty in concluding that these functions and duties were sufficiently discretionary to call for immunity. Haddock v City of New York (supra) supports this conclusion.
In Haddock (supra), we decided that the City could be held liable for its negligent hiring and retention of a parks department employee who raped a child. But we did not decide in Haddock that the actions of a municipality in hiring or retaining an employee were not of the sort that could be subject to governmental immunity. On the contrary, we indicated that such actions could involve the sort of discretionary judgments to which immunity would attach. We found the issue not determinative, however, because, under the particular facts presented, the immunity doctrine could not have been applicable in any event. We explained:
"We need not determine whether the City’s retention of Johnson at the Parkside Playground would be subject to absolute or qualified immunity because the City’s argument for any immunity here has a fundamental flaw. The difficulty with the City’s contention that it is entitled to a cloak of immunity for the discretionary decision to retain Johnson in his status is that there is no evidence that, prior to the rape, the City in fact made any such decision or exercised any such discretion * * * There is no indication that, before the attack on plaintiff, the City made any effort to comply with its own personnel procedures for employees with criminal records, and no indication that it made a judgment of any sort when it learned that Johnson both had a criminal record and lied egregiously about it. ” (Id., at 485 [emphasis added].)
That the departmental responsibilities of Officers Kelly and Springer for hiring were sufficiently discretionary to receive immunity does not end the inquiry, however. Immunity could not apply unless the negligent hiring resulted from the exercise of their discretion. We conclude that it did. Officer Kelly, *315 as the investigator assigned to Shankman’s application, was required to make a judgment in evaluating the biographical and background information derived from the application and his interview with Shankman. When he learned of Shank-man’s previous employment at Rite-Aid and of his 1979 arrest, Officer Kelly was faced with making discretionary decisions concerning the seriousness of the incident leading to the disorderly conduct conviction and how much, if any, additional investigation was warranted. Whether to make a favorable recommendation in spite of the Rite-Aid incident and Shankman’s failure to disclose it necessarily required Officer Kelly to exercise discretion in weighing these factors against Shankman’s otherwise favorable record. Lieutenant Springer’s decision to accept Officer Kelly’s recommendation and to overlook the disorderly conduct conviction — while unwise, as it turned out — was nevertheless based on the exercise of judgment.
Concededly, there may be some acts in the hiring process which, if isolated from the rest, could be viewed as nondiscretionary and thus support a claim for negligence. But, viewing the record as a whole, it is evident that the claim for negligently hiring Shankman, despite the known unfavorable information as to his character, essentially arises from a misjudgment that was discretionary. It is in this crucial respect that the case before us differs from Haddock v City of New York (supra) where the "key fact [was] that no City employee in the relevant time frame weighed the impact of [the employee’s] record on his work assignment or made a judgment that he should be retained at the Parkside Playground” (id., at 485).
Plaintiffs argue, again relying on Haddock (supra), that the City cannot be immune because it allegedly violated various statutory and regulatory provisions concerning employment practices (see, Civil Service Law § 50 [4]; 4 NYCRR 3.2).* These *316 provisions, plaintiffs maintain, flatly prohibit the employment of anyone who supplies false information and, thus, in hiring Shankman, despite the nondisclosure of his arrest and work at Rite-Aid, the City contravened its own rules. Under our decision in Haddock, the argument goes, the violation of these rules forecloses the City from claiming any immunity (see, id., at 485). We disagree for two reasons.
First, the hiring of Shankman did not violate these rules. The only reference to false statements or deception in either provision is the permissive term in Civil Service Law § 50 (4) to the effect that a municipality "may refuse * * * to certify an eligible” (emphasis added); nor do we construe the applicant’s initial nondisclosures of the Rite-Aid incident to be such as would mandate his disqualification for noncooperation under 4 NYCRR 3.2 (c). Second, as contrasted with the violation of the hiring procedures in Haddock which resulted in the total failure to exercise discretion, any violation of these provisions which may be claimed to have occurred was because the officials did exercise their discretion, but did so improperly in appointing Shankman despite their knowledge of information casting doubt on his character.
In sum, we hold that because the essence of plaintiffs’ negligent hiring claims is the allegedly mistaken exercise of discretion by Officers Kelly and Springer in hiring Shankman, the City is protected from liability therefor under the doctrine of governmental immunity (see, Haddock v City of New York, supra, at 484-485; Arteaga v State of New York, supra, at 216; Tarter v State of New York, supra, at 517-518; Tango v Tulevech, supra, at 40-42; cf., McCrink v City of New York, 296 NY, at 106 supra). Based on the foregoing, the only sustainable award is for the false arrest of Andre Mon, established *317 below in the principal sum of $50,000. Accordingly, the order should be modified, without costs, and the case remitted to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order modified, etc.

 Civil Service Law § 50 (4) provides in part:
"4. Disqualification of applicants and eligibles. The state civil service department and municipal commissions may refuse to examine an applicant, or after examination to certify an eligible
"f. who has intentionally made a false statement of any material fact in his application; or
"g. who has practiced, or attempted to practice, any deception or fraud in his application, in his examination, or in securing his eligibility or appointment”.
4 NYCRR 3.2 provides in part:
*316 "3.2 Disqualification, (a) Good moral character and habits and a satisfactory reputation shall be requirements for appointment to a position subject to these rules. Any applicant who is found to lack such requirements shall be disqualified for examination or, after examination, for certification and appointment * * *
"(c) The burden of establishing his qualifications to the satisfaction of the Civil Service Department shall be upon the applicant. Any applicant who refuses to permit the department to investigate matters necessary for the verification of his qualifications or who otherwise hampers, impedes or fails to cooperate with such department in such investigation shall be disqualified for examination or, after examination, for certification and appointment.”