■ TAMMY D. JOHNSON et al., Respondents, v CITY OF NEW YORK et al., Appellants. (And Another Action.) [884 NYS2d 44]—

Order, Supreme Court, New York County (Karen Smith, J.), entered July 31, 2008, which denied defendants' motion for summary judgment dismissing the complaint, reversed, on the law, without costs, the motion granted, and the complaint dismissed. The Clerk is directed to entered judgment accordingly.

This negligence action arises from an exchange of gunfire involving police officers and an armed robbery suspect on a residential street in Manhattan. The officers had followed two men who were armed robbery suspects, from 125th Street, along Lenox Avenue, and then onto 126th Street in the direction of Fifth Avenue. All of the officers involved testified that as they entered 126th Street they did not see any bystanders. On 126th Street they exited their police car, and ordered one of the suspects to drop a gun which they observed him to be carrying. Instead of complying he began to fire his weapon at them, and they returned his fire.

Plaintiff testified that she was outside her residence on 126th Street when she heard shots being fired. She grabbed her daughter, and took cover behind a truck. She did not notice the police officers as the shooting began, and only saw two men running down the street.

As a general rule, a municipal defendant is immune from liability for conduct involving the exercise of discretion and reasoned judgment (*see Mon v City of New York*, 78 NY2d 309 [1991]). However, the judgment error rule does not immunize municipal defendants when an innocent bystander is injured by the action of a police officer "in an altercation involving a violation of established police guidelines governing the use of deadly physical force by police officers" (*Lubecki v City of New York*, 304 AD2d 224, 234 [2003], *lv denied* 2 NY3d 701 [2004]; *see Rodriguez v City of New York*, 189 AD2d 166, 178 [1993]).

In this case, there has been no showing that any police guidelines were violated. There is no evidence that innocent persons were unnecessarily endangered, because nothing indicates that at the time the robbery suspect opened fire there were any bystanders, including the plaintiffs, in view. To the contrary, the uncontradicted testimony of the police officers was that they saw no bystanders as they sought to protect themselves and their fellow officers by returning fire. The police took appropriate measures to protect themselves, as well as the public, which was clearly endangered by the actions of this fleeing felon. Furthermore, in view of the absence of proof that there were

any bystanders in view, the report of the plaintiffs' expert suggesting that there were questions of fact as to whether police guidelines were violated must be rejected.

Under such circumstances, the officers' exercise of their professional judgment in deciding whether to use appropriate force as they pursued an individual who was firing at them is not actionable. Concur—Andrias, J.P., Nardelli and McGuire, JJ.

Acosta and DeGrasse, JJ., dissent in a memorandum by DeGrasse, J., as follows: I respectfully dissent. Plaintiffs are bystanders who were shot during a daylight exchange of gunfire between police officers and a robbery suspect. Five police officers, including Officers Beddows and Garcia, discharged their weapons during the incident. All of the police officers involved used 9 millimeter weapons as opposed to the .380 caliber pistol fired by the suspect. Plaintiffs' ballistics expert opined that a bullet fragment taken from plaintiff Tammy Johnson's arm is "consistent with having been fired from one of the Police officers weapons [*sic*]." The City's ballistics expert added that the fragment recovered from Johnson's body could have come from the weapon fired by either Beddows, Garcia or Williams, another officer. West 126th Street is a one-way street running east to west. During the relevant part of the gunfire, the suspect was crouched behind a van parked in front of 60 West 126th Street, on the south side of the street. Beddows fired from a position behind a vehicle which was parked across the street, in front of 69 West 126th Street. Garcia fired his weapon from the north side of the street, directly across the street from 40 West 126th Street. Johnson testified that she, her then 19-month-old daughter and plaintiff Garnold King were wounded while crouched at the tail end of an SUV which was parked facing west in front of 58 West 126th Street. The next parked vehicle behind the SUV was 2½ car lengths away.

The complaint includes allegations of negligence. Citing *Mon v City of New York* (78 NY2d 309 [1991]) and other cases, the City moved for summary judgment on the ground that municipalities are immune from liability for conduct involving the exercise of discretion and reasoned judgment. Supreme Court denied the motion, finding an issue of fact as to whether the police officers failed to follow their department's procedures by discharging their weapons in a way that unnecessarily endangered innocent persons. Citing *Lubecki v City of New York* (304 AD2d 224 [2003], *lv denied* 2 NY3d 701 [2004]) and *Rodriguez v City of New York* (189 AD2d 166 [1993]), the majority has reversed the order below finding no showing that police guidelines were violated. I disagree and would affirm Supreme Court's decision for the reasons that follow.

A municipality is immune from liability for the injurious consequences of conduct involving the exercise of discretion and reasoned judgment (*see Mon*, 78 NY2d at 313-316). Such immunity applies to the actions of police officers engaged in law enforcement activities, but does not apply where police officers act in violation of acceptable police practice (*see e.g. Lubecki*, 304 AD2d at 233-234). This case presents the question of whether plaintiffs' injuries were brought about by a departure from acceptable police practice.

The Police Department's procedure No. 203.12 sets forth the following relevant guidelines with respect to the use of firearms:

"a. Police officers shall not use deadly physical force against another person unless they have probable cause to believe they must protect themselves or another person present from imminent death or serious physical injury.

"b. Police officers shall not discharge their weapons when doing so will unnecessarily endanger innocent persons."

As to the first guideline, based on the conduct of the armed robbery suspect there was probable cause for the use of firearms by those police officers who could do so without endangering innocent bystanders. As to the second guideline, the majority concludes that "[t]here is no evidence that innocent persons were unnecessarily endangered, because nothing indicates that at the time the robbery suspect opened fire there were any bystanders, including plaintiffs, in view." A sketch prepared by the Police Department's Crime Scene Unit depicts an obtuse triangle formed by the positions of Officer Garcia, the robbery suspect and plaintiffs with the longest side extending between Garcia and the suspect and the shortest between the suspect and plaintiffs, two brownstones away. Garcia testified that he saw the suspect but did not see plaintiffs. Nevertheless, evidence indicates that when Garcia fired his weapon plaintiffs were closer than the suspect, with $2^1/_2$ empty parking spaces behind them on the side Garcia was facing. Garcia testified at his deposition as follows:

"Q. While you were shooting, did you look to see whether there were any pedestrians or bystanders on the street.

"A. No."

Similarly, Beddows gave the following testimony:

"Q. Did you see any pedestrians or civilians on the street at the time other than the perp?

"A. No.

"Q. Did you look to see if there were any around?

"A. I looked after pretty much everything was done."

I submit that the foregoing creates a triable factual issue as to whether Garcia and Beddows violated the Police Department's guideline by failing to even ascertain whether innocent persons were unnecessarily endangered at the time they discharged their weapons.