[942 NE2d 219, 917 NYS2d 10]

Tammy D. Johnson, Individually and as Mother and Natural Guardian of Arjaye Johnson, an Infant, et al., Appellants, v City of New York et al., Respondents. (And Another Action.)

Argued October 20, 2010; decided November 23, 2010

## POINTS OF COUNSEL

*Gutterman & Speiser*, New York City (*Barry A. Gutterman* of counsel), and *Kliegerman & Joseph, LLP* (*Michael P. Joseph* of counsel), for appellants. Defendants' motion for summary judgment was improperly granted by the majority in the Appellate Division, First Department. (*Haddock v City of New York*, 75 NY2d 478; *Lubecki v City of New York*, 304 AD2d 224, 2 NY3d 701; *Summerville v City of New York*, 257 AD2d 566, 94 NY2d 755; *Rodriguez v City of New York*, 189 AD2d 166; *Schuster v City of New York*, 5 NY2d 75; *Ezra v Life Ins. Co. of N. Am.*, 298 AD2d 267; *Cuevas v City of New York*, 32 AD3d 372; *Bitici v New York City Tr. Auth.*, 245 AD2d 157; *Cassagnol v Williamsburg Plaza Taxi*, 234 AD2d 208; *Velez v City of New York*, 157 AD2d 370, 76 NY2d 715.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Susan Paulson* and *Francis F. Caputo* of counsel), for respondents. The City of New York is immune from liability in negligence as a matter of law where, in response to being shot at on a public street, the police acted in accordance with police guidelines for the use of deadly physical force. (*McLean v City of New York*, 12 NY3d 194; *Lauer v City of New York*, 95 NY2d 95; *Tango v Tulevech*, 61 NY2d 34; *McCormack v City of New York*, 80 NY2d 808; *Arias v City of New York*, 22 AD3d 436; *Lubecki v City of New York*, 304 AD2d 224; *Rodriguez v City of New York*, 189 AD2d 166; *Merenda v Consolidated Rail Corp.*, 248 AD2d 684; *Diaz v New York Downtown Hosp.*, 99 NY2d 542; *Galapo v City of New York*, 95 NY2d 568.)

## OPINION OF THE COURT

PIGOTT, J.

On May 27, 2005 at approximately 6:30 P.M., New York City Police Officers Williams and Loor received a complaint from a

pedestrian that two men had just attempted to rob him with a gun. The officers pursued one of the suspects from 125th Street, along Lenox Avenue, onto 126th Street. Officer Williams transmitted the attempted robbery complaint over the radio while Officer Loor drove their police cruiser to the corner of 126th Street and Lenox Avenue, parking two car lengths away from the suspect. When the officers got out of the cruiser and ordered the suspect to drop his weapon, he pointed the gun at them and started shooting. The officers returned fire and sought cover behind a trailer on the south side of the street; the suspect hid behind a van farther up 126th Street on the same side.

Officer Loor then ran from the south side of 126th Street to the north side, positioning himself behind a tree directly across the street from the suspect. The suspect fired at Officer Loor, who responded in kind. According to the pretrial testimony, Officer Loor did not see any bystanders in the area while he was shooting, and the area near the suspect was clear of pedestrians. Officer Williams—who continued using the trailer for cover— observed the suspect back onto the sidewalk from behind the van and, having a view of the suspect's profile and being concerned for Officer Loor's safety, fired one or two shots at the suspect. She testified that she did not observe any pedestrians in the area when discharging her weapon.

During the melee, three other officers appeared on the scene. Officer Garcia heard a scream from the direction of Lenox Avenue. He walked toward the commotion and observed the suspect shoot at Officers Williams and Loor and then hide behind the van. Officer Garcia took cover in a brownstone well on the north side of the street. He had a clear view of the suspect and fired at him out of concern for Officer Loor, who was taking fire; Officer Garcia did not see any pedestrians or bystanders on the street.

Officers Beddows and Eckert separately responded to the scene. Officer Beddows took cover on the north side of the street behind a cruiser. He observed the suspect firing shots from behind the van. Officer Beddows had a clear view when he fired two shots at the suspect, and he saw no pedestrians on the street other than the suspect.

Officer Eckert positioned his cruiser in front of the van. He observed only the suspect and did not see any other pedestrians on the block. He walked toward the rear of his cruiser and took

cover behind a car on the south side of the street. During the exchange of gunfire between Officer Loor and the suspect, the suspect moved to the sidewalk and Officer Eckert, having a clear view, fired one shot at the suspect. Officer Eckert reholstered his weapon and saw Officer Loor walking toward the suspect, who was lying face down on the ground. Officers Loor and Eckert met near the suspect and Officer Loor kicked the firearm away from the suspect's hand.

Plaintiff Tammy Johnson was playing with her 18-month-old daughter and socializing with neighbors on 126th Street near her residence when she heard gunshots, which sent her neighbors fleeing into the house. Johnson saw two men running toward her, one of whom was carrying a gun. Johnson and her daughter lay on the ground behind a white SUV, which was two vehicles away from the van behind which the suspect was hiding. She looked under the SUV and saw the suspect on the south side of the street lying on the ground shooting at a police officer across the street. An errant bullet struck Johnson's elbow.*

Johnson, individually and on behalf of her daughter, commenced this negligence action against the City and police officers alleging, among other things, that the officers negligently discharged their firearms in violation of department guidelines. The City interposed an answer and, upon completion of discovery, moved for summary judgment on the ground that the officers exercised their professional judgment and acted reasonably in returning fire once fired upon.

Johnson opposed the City's motion and cross-moved for summary judgment on liability, claiming that the officers violated New York City Police Department Procedure No. 203-12, entitled "Deadly Physical Force," which sets forth the guidelines for the use of firearms. The relevant guidelines state that

> "a. Police officers shall not use deadly physical force against another person unless they have probable cause to believe that they must protect themselves or another person present from imminent death or serious physical injury.

> "b. Police officers shall not discharge their weapons when doing so will unnecessarily endanger innocent persons."

---

* The evidence in the record indicates that Johnson's daughter may have been grazed by a bullet but received no treatment for it.

Johnson argued that the officers violated subsection (b).

Supreme Court denied Johnson's cross motion insofar as relevant to this appeal, and the City's motion for summary judgment, holding that although the City met its burden of establishing that the officers exercised their professional judgment, there was an issue of fact as to whether the officers violated police guidelines by discharging their weapons.

The Appellate Division, in a 3-2 decision, reversed and dismissed the complaint, holding that Johnson failed to show that the officers violated any of the guidelines. The court pointed to the uncontradicted testimony of the officers that there were no pedestrians in sight as the officers "sought to protect themselves and their fellow officers by returning fire" (65 AD3d 476, 477 [1st Dept 2009]). It concluded that, absent any proof that there were pedestrians in view, the report from Johnson's expert that there were questions of fact as to whether the officers violated police guidelines was without merit (*see id.* at 477-478). The dissenters, on the other hand, concluded that the deposition testimonies of Officers Garcia and Beddows, where they testified that they did not look for bystanders while they were shooting at the suspect, raised an issue of fact as to whether those officers violated police guidelines "by failing to even ascertain whether innocent persons were unnecessarily endangered at the time they discharged their weapons" (*id.* at 479-480). We now affirm.

The professional judgment rule insulates a municipality from liability for its employees' performance of their duties " 'where the . . . conduct involves the exercise of professional judgment such as electing one among many acceptable methods of carrying out tasks, or making tactical decisions' " (*McCormack v City of New York*, 80 NY2d 808, 811 [1992], quoting *Kenavan v City of New York*, 70 NY2d 558, 569 [1987]). Immunity under the professional judgment rule

> " 'reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury' " (*Mon v City of New York*, 78 NY2d 309, 313 [1991], quoting *Haddock v City of New York*, 75 NY2d 478, 484 [1990]).

This immunity, however, presupposes that judgment and discretion are exercised in compliance with the municipality's procedures, because "the very basis for the value judgment supporting immunity and denying individual recovery becomes irrelevant where the municipality violates its own internal rules and policies and exercises no judgment or discretion" (*Haddock*, 75 NY2d at 485).

The guideline here calls for such judgment, i.e., the police must not discharge their firearms if doing so would "unnecessarily endanger innocent persons." It does not prohibit officers from discharging their weapons when innocent bystanders are present in every instance. Rather, the guideline grants officers the discretion to make a judgment call as to when, and under what circumstances, it is necessary to discharge their weapons.

The officers clearly had probable cause to fire their weapons at the suspect: they were in pursuit of an armed individual who opened fire on them on a public street, endangering the lives of the officers and the public. Johnson asserts, however, that she met her burden of raising a question of fact that the officers violated the guideline because they did not survey the area to see if bystanders were present before firing at the suspect. However, on this record, it is uncontroverted that all of the officers who fired at the suspect did so when they had a clear view of him, and all testified that they did not see any bystanders in the area while firing, such that it cannot be said that the officers failed to exercise discretion in discharging their weapons. Nor is there any evidence that Johnson and her daughter were in the line of fire during the melee such that a question of fact was presented as to whether officers' discharge of their firearms violated the guideline (*cf. Lubecki v City of New York*, 304 AD2d 224 [1st Dept 2003], *lv denied* 2 NY3d 701 [2004] [violation of guideline where officers failed to call hostage negotiator and also fired at suspect when he was using hostage as a shield]; *Rodriguez v City of New York*, 189 AD2d 166 [1st Dept 1993] [officer violated police procedure by discharging weapon at suspect when there was a crowd between them]). Although Johnson submitted an affidavit from an expert who claimed that Johnson and her daughter were "totally exposed" to Officer Garcia, the expert's claim that Officer Garcia must have seen them does not answer the more basic question—did the officers exercise their judgment when confronted with an armed suspect firing at them? There is no evidence that they did not. The fact that the officers did not observe the bystanders who

were present at the time they were exercising that judgment does not raise an issue as to whether they unnecessarily endangered innocent persons.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

JONES, J. (dissenting). Because there is an issue of fact as to whether the police officers violated a New York City Police Department guideline that prohibits unnecessarily endangering innocent persons by failing to ascertain the presence of bystanders before firing their weapons, I respectfully dissent and would reverse the order of the Appellate Division.

Generally, municipalities are immunized from liability for the exercise of discretion by their agencies or officials. When official acts, including those of police officers (*see Rodriguez v City of New York*, 189 AD2d 166, 178 [1st Dept 1993]), involve the exercise of discretion or reasoned judgment, there is no liability for injuries even if the official action is negligent or malicious (*see Tango v Tulevech*, 61 NY2d 34, 40 [1983]).

However, this broad protection is neither absolute, nor automatically afforded, as the municipality must exercise discretion in compliance with its own procedures (*see Haddock v City of New York*, 75 NY2d 478, 486 [1990]). Governmental immunity will not be provided "where the municipality violates its own internal rules and policies and exercises no judgment or discretion" (*id.* at 485). In the context of police officers, immunity "does not extend to situations where the employee, a police officer, violates acceptable police practice" (*Lubecki v City of New York*, 304 AD2d 224, 233-234 [1st Dept 2003], citing *Rodriguez*, 189 AD2d at 178).

New York City Police Department Procedure No. 203-12, entitled "Deadly Physical Force," as relevant here, commands that "b. Police officers shall not discharge their weapons when doing so will unnecessarily endanger innocent persons."

Here, there is an issue of fact as to whether the police officers violated this elemental requirement. Record evidence establishes the presence of bystanders in the immediate area of the shooting. For example, photographic evidence indicates plaintiffs were in close proximity to the suspect, who was positioned approximately two car lengths away. A crime scene sketch, created by the Police Department Crime Scene Unit, showing the relative positions of all the individuals involved in the incident indicates that when Officer Garcia fired his weapon, he was

positioned across the street from plaintiffs and the suspect. The sketch also supports the inference that plaintiffs, who were taking cover behind a parked vehicle, should have been plainly visible to Officer Garcia as he fired at the suspect just beyond them.

Further, when questioned about the incident, Officer Garcia answered that he never affirmatively looked for pedestrians before firing his weapon. Officer Beddows similarly testified that he did not determine whether pedestrians were present before firing his weapon. In fact, he stated that he did not look for bystanders until "after pretty much everything was done." Given the close proximity of plaintiffs to the suspect, the admitted failure of some officers to look for bystanders before firing their weapons creates a triable issue as to whether the police violated departmental guidelines prohibiting actions that unnecessarily endanger innocent persons.

While I acknowledge the difficulties faced by police officers in the performance of their duties, I find it troubling that some of the officers in this incident failed to observe the surrounding area prior to firing their weapons. Our governmental immunity precedent is premised on the inherent requirement that reasoned judgment be used in exercising discretion. And where, as here, there is evidence that police officers failed to look for innocent persons before firing their weapons, it does not seem possible to conclude as a matter of law that the necessary judgment was exercised and, concomitantly, that there was no violation of the guideline against unnecessarily endangering innocent persons. As this Court has previously stated, immunity will not be provided where "[t]here is no indication that . . . the City made any effort to comply with its own personnel procedures" (*Haddock*, 75 NY2d at 485).

The majority relies on *Rodriguez* and *Lubecki* to conclude that there is no issue of fact as to whether the officers violated guidelines because plaintiffs were not in the line of police fire. However, the applicable guideline does not merely prohibit police from discharging their weapons when there is a civilian directly in the path of police fire. *Rodriguez* and *Lubecki* dealt with facts indicating clear violations of police guidelines because of certain injury to innocent persons. In *Rodriguez*, an officer fired through a crowd at a suspect, and in *Lubecki*, officers fired at a suspect holding an innocent person hostage. While these cases present classic scenarios of endangerment, they should not be understood to be the exclusive examples of violations of

the applicable guideline. For the subject guideline's intended purpose and protections to be afforded, the exercise of reasoned judgment must be extended to situations where civilians are close enough to a target to be endangered. Here, the record establishes the presence of plaintiffs in the immediate area of the suspect and the affirmative failure of the officers to look for innocent persons before firing their weapons. In a summary judgment context particularly, where a court's function is "issue-finding, rather than issue-determination" (*Pirrelli v Long Is. R.R.*, 226 AD2d 166, 166 [1996]), plaintiffs have raised sufficient questions of fact on the issue of unnecessary endangerment to warrant a trial.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge JONES dissents and votes to reverse in a separate opinion in which Chief Judge LIPPMAN and Judge CIPARICK concur.

Order affirmed, with costs.