Santaiti v Town of Ramapo (2018 NY Slip Op 04584)





Santaiti v Town of Ramapo


2018 NY Slip Op 04584


Decided on June 20, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 20, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
ROBERT J. MILLER
SYLVIA O. HINDS-RADIX
JOSEPH J. MALTESE, JJ.


2017-03742
2017-05259
 (Index No. 31509/16)

[*1]Diana Santaiti, etc., respondent, 
v
Town of Ramapo, etc., appellant, et al., defendants.


Sokoloff Stern LLP, Carle Place, NY (Steven C. Stern and David A. Gold of counsel), for appellant.
Levine & Gilbert, New York, NY (Harvey A. Levine of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for personal injuries and wrongful death, the defendant Town of Ramapo appeals from (1) an order of the Supreme Court, Westchester County (Linda Christopher, J.), dated February 24, 2017, and (2) an amended order of the Supreme Court, Rockland County (Linda Christopher, J.), dated May 4, 2017. The amended order, insofar as appealed from, denied that branch of the motion of the defendant Town of Ramapo, made jointly with the defendant Town of Ramapo Police Department, which was pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it.
ORDERED that the appeal from the order dated February 24, 2017, is dismissed, as that order was superseded by the amended order dated May 4, 2017; and it is further,
ORDERED that the amended order dated May 4, 2017, is affirmed insofar as appealed from; and it is further,
ORDERED that one bill of costs is awarded to the plaintiff.
This action was commenced by the plaintiff in her capacity as the administrator of the estate of her mother, Patricia A. Nigro, who was shot and killed by her husband, William T. Groesbeck.
The complaint alleged that Nigro and Groesbeck lived together at a residence in Sloatsburg, New York, which was within the jurisdiction of the defendant Town of Ramapo Police Department (hereinafter the Town police department). The complaint also alleged that Groesbeck was a former police officer who had worked for the Ramsey, New Jersey Police Department. The complaint alleged that although Groesbeck possessed a "carry weapon" while residing at the Sloatsburg residence, he did not possess a license to carry or possess the weapon in the State of New York.
The complaint alleged that, on an unspecified date in 2015, Nigro contacted the Town police department after Groesbeck physically assaulted her. The complaint alleged that members [*2]of the Town police department responded to the couple's Sloatsburg residence, where Nigro told them that Groesbeck had assaulted her and that she feared for her life. Nigro allegedly notified the responding police officers that Groesbeck possessed a handgun. The complaint alleged that the officers confiscated Groesbeck's handgun but did not arrest him.
The complaint alleged that the Town police department later learned that Groesbeck had been a police officer in New Jersey and that it "illegally and irresponsibly returned" the handgun to Groesbeck "even though he could not produce and in fact did not have a license" to possess the handgun in the State of New York.
The complaint alleged that on October 21, 2015, Groesbeck viciously beat Nigro, causing skull fractures and other internal injuries. Groesbeck then shot and killed Nigro with the same handgun that had been returned to him by the Town police department. After murdering Nigro, Groesbeck took his own life.
The plaintiff sought to recover damages against, among others, the Town of Ramapo for personal injuries and wrongful death. The complaint alleged that the Town, by virtue of the actions of the Town police department, was negligent in returning the handgun to Groesbeck. The complaint alleged that the Town police department did not have the legal authority to return the handgun to Groesbeck since he was not licensed to possess it in the State of New York. The complaint further alleged that Nigro had relied upon the fact that the Town police department would comply with existing law.
The Town moved, inter alia, pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it, submitting evidence in support of its motion. The Town argued that it did not owe Nigro a duty of care since there was no special relationship between her and the Town police department. The Town further contended that Groesbeck's criminal acts were a superseding cause of Nigro's death. Finally, the Town argued that the doctrine of governmental immunity shielded it from liability for the discretionary actions alleged in the complaint. In an amended order dated May 4, 2017, the Supreme Court denied that branch of the Town's motion. The Town appeals.
"When a negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425; see Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d 709, 713). "A government entity performs a purely proprietary role when its activities essentially substitute for or supplement traditionally private enterprises" (Applewhite v Accuhealth, Inc., 21 NY3d at 425 [internal quotation marks omitted]). "In contrast, a municipality will be deemed to have been engaged in a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers" (id. [internal quotation marks omitted]). "Police and fire protection are examples of long-recognized, quintessential governmental functions" (id.; see Valdez v City of New York, 18 NY3d 69, 75). Here, given the allegations of negligence contained in the complaint, we conclude that the Town was engaged in a governmental function at the time that the causes of action arose (see Applewhite v Accuhealth, Inc., 21 NY3d at 425; Valdez v City of New York, 18 NY3d at 75).
Once it is determined that a municipality was exercising a governmental function, the next inquiry focuses on the extent to which the municipality owed a duty to the injured party (see Applewhite v Accuhealth, Inc., 21 NY3d at 426). In order to sustain liability against a municipality engaged in a governmental function, "the duty breached must be more than that owed the public generally" (Lauer v City of New York, 95 NY2d 95, 100; see Applewhite v Accuhealth, Inc., 21 NY3d at 426; Valdez v City of New York, 18 NY3d at 75). Indeed, "although a municipality owes a general duty to the public at large . . . this does not create a duty of care running to a specific individual sufficient to support a negligence claim, unless the facts demonstrate that a special duty was created" (Valdez v City of New York, 18 NY3d at 75; see Coleson v City of New York, 24 NY3d 476, 481; Pelaez v Seide, 2 NY3d 186, 198). A "special duty" is "a duty [that] is born of a special relationship between the plaintiff and the governmental entity" (Pelaez v Seide, 2 NY3d at 198-199; [*3]see Cockburn v City of New York, 129 AD3d 895, 896).
As relevant here, a special relationship may be formed when the following elements are present: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (Cuffy v City of New York, 69 NY2d 255, 260).
Since the existence of a duty is an essential element of a negligence cause of action, a plaintiff bears the ultimate burden of pleading and proving the existence of a special duty (see Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d at 714; Lauer v City of New York, 95 NY2d at 100-101). "Whether a special relationship exists is generally a question for the jury" (Coleson v City of New York, 24 NY3d at 483; see De Long v County of Erie, 60 NY2d 296, 306).
On appeal, the Town contends that the Supreme Court erred in denying that branch of its motion which was pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it. The Town argues that it did not owe a special duty to Nigro.
On a motion to dismiss pursuant to CPLR 3211(a)(7), the complaint is to be afforded a liberal construction, the facts alleged are presumed to be true, the plaintiff is afforded the benefit of every favorable inference, and the court is to determine only whether the facts as alleged fit within any cognizable legal theory (see CPLR 3026; Leon v Martinez, 84 NY2d 83, 87-88; Kassapian v City of New York, 155 AD3d 851, 853). Where, as here, a defendant submits evidence in support of a motion to dismiss pursuant to CPLR 3211(a)(7), and the motion has not been converted into one for summary judgment, "the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one and, unless it has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate" (Agai v Liberty Mut. Agency Corp., 118 AD3d 830, 832, citing Guggenheimer v Ginzburg, 43 NY2d 268, 274-275; see Rozell v Milby, 98 AD3d 960). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19; see Carlson v American Intl. Group, Inc., 30 NY3d 288, 298).
Here, construing the complaint liberally and according the plaintiff the benefit of every possible favorable inference, it was sufficient to allege the existence of a special relationship between the Town and Nigro. The complaint adequately alleged "direct contact" between the agents of the Town and Nigro (Cuffy v City of New York, 69 NY2d at 260), and that the Town police department undertook "through promises or actions" an affirmative duty, on behalf of Nigro, to safeguard Groesbeck's handgun (id.; see Benway v City of Watertown, 1 AD2d 465, 467). In addition, the complaint adequately alleged circumstances indicating that the Town, through its agents, knew that the return of the handgun to Groesbeck "could lead to harm" (Cuffy v City of New York, 69 NY2d at 260). The Town's evidentiary submissions failed to "utterly refute" these factual allegations as a matter of law (Torres v City of New York, 153 AD3d 647, 649; see Matter of Linder, 153 AD3d 1343).
Contrary to the Town's contention, the complaint was also sufficient to allege Nigro's "justifiable reliance" on the Town's affirmative undertaking to safeguard Groesbeck's handgun (Cuffy v City of New York, 69 NY2d at 260). The complaint alleged that Groesbeck did not have a license to possess the handgun in the State of New York and that his possession of the handgun was therefore unlawful. In light of the facts alleged in the complaint, it cannot be said at this juncture that it was unreasonable, as a matter of law, for Nigro to have relied upon the affirmative undertakings alleged in the complaint. Furthermore, the deposition testimony submitted by the Town in support of its motion does not constitute documentary evidence within the intendment of CPLR 3211(a)(1) (see Fox Paine & Co., LLC v Houston Cas. Co., 153 AD3d 673, 677-678; see generally Fontanetta v John Doe 1, 73 AD3d 78, 84-86), and the Town's evidentiary submissions failed to demonstrate, as a matter of law, that it was unreasonable for Nigro to have relied upon the [*4]alleged undertaking. Accordingly, we agree with the Supreme Court's conclusion that the complaint adequately alleged the existence of a special duty and that the Town failed to submit documentary evidence with respect to that issue to demonstrate that "a material fact as claimed by the plaintiff . . . is not a fact at all" (Agai v Liberty Mut. Agency Corp., 118 AD3d at 832).
The Town further contends that the negligence alleged in the complaint, as a matter of law, was not a proximate cause of Nigro's death because Groesbeck's criminal actions constituted an intervening act that severed any causal connection, thereby relieving it from any liability. This contention is without merit.
" [T]here may be more than one proximate cause of an injury'" (Mazella v Beals, 27 NY3d 694, 706, quoting Argentina v Emery World Wide Delivery Corp., 93 NY2d 554, 560 n 2). "To carry the burden of proving a prima facie case, [a] plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury" (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315; see Turturro v City of New York, 28 NY3d 469, 483; Mazella v Beals, 27 NY3d at 706).
"Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed" (Derdiarian v Felix Contr. Corp., 51 NY2d at 315; see Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 520-521). "In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence" (Derdiarian v Felix Contr. Corp., 51 NY2d at 315; see Turturro v City of New York, 28 NY3d at 484). "This is true even where the intervening acts of a third party may be characterized as intentional, reckless, or criminal" (Turturro v City of New York, 28 NY3d at 484; see Nallan v Helmsley-Spear, Inc., 50 NY2d at 520-521).
Accordingly, although "an intervening intentional or criminal act will generally sever the liability of the original tort-feasor," this principle "has no application when the intentional or criminal intervention of a third party or parties is reasonably foreseeable" (Kush v City of Buffalo, 59 NY2d 26, 33; see Turturro v City of New York, 28 NY3d at 484; Bell v Bd. of Educ., 90 NY2d 944, 946). More generally, "[a]n intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent" (Derdiarian v Felix Contr. Corp., 51 NY2d at 316; see Hain v Jamison, 28 NY3d 524, 531).
On the other hand, "[i]f the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus" (Derdiarian v Felix Contr. Corp., 51 NY2d at 315). "As with determinations regarding proximate cause generally, [b]ecause questions concerning what is foreseeable and what is normal may be the subject of varying inferences,' whether an intervening act is foreseeable or extraordinary under the circumstances generally [is] for the fact finder to resolve'" (Turturro v City of New York, 28 NY3d at 484, quoting Derdiarian v Felix Contr. Corp., 51 NY2d at 315).
Here, assuming the facts alleged in the complaint as true and according the plaintiff the benefit of every favorable inference, a factfinder could reasonably conclude that Groesbeck's use of the allegedly illegal handgun to harm Nigro was a "foreseeable consequence of the situation created by the [Town's] negligence" (Derdiarian v Felix Contr. Corp., 51 NY2d at 315; see Hain v Jamison, 28 NY3d at 531). Indeed, accepting the facts alleged in the complaint as true, a reasonable factfinder could infer that the Town police department took possession of the handgun in order to protect Nigro against just such a risk of harm. Furthermore, the evidence submitted by the Town in support of its motion failed to conclusively demonstrate, as a matter of law, that the Town's alleged negligence was not a proximate cause of Nigro's death (see generally Hershco v Gordon & Gordon, 155 AD3d 1007, 1009; McBride v New York Prop. Ins. Underwriting Assn., 152 AD3d 505, 506).
The Town's contention that the doctrine of governmental immunity shields it from liability is also without merit. The issue of whether a defendant is entitled to governmental [*5]immunity is distinct from the issue of whether a special duty exists in a particular case (see Valdez v City of New York, 18 NY3d at 75-76). The doctrine of governmental immunity refers to "an affirmative defense on which [a defendant] bears the burden of proof" (Villar v Howard, 28 NY3d 74, 81). "[T]he common-law doctrine of governmental immunity . . . shield[s] public entities from liability for discretionary actions taken during the performance of governmental functions" (Valdez v City of New York, 18 NY3d at 75-76). "In other words, even if a plaintiff establishes all elements of a negligence claim, a state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority" (id. at 76).
However, "the governmental function immunity defense cannot attach unless the municipal defendant establishes that the discretion possessed by its employees was in fact exercised in relation to the conduct on which liability is predicated" (id.; see Mon v City of New York, 78 NY2d 309, 313; Haddock v City of New York, 75 NY2d 478, 484). Furthermore, the availability of the governmental immunity defense requires "that judgment and discretion are exercised in compliance with the municipality's procedures, because the very basis for the value judgment supporting immunity and denying individual recovery becomes irrelevant where the municipality violates its own internal rules and policies and exercises no judgment or discretion'" (Johnson v City of New York, 15 NY3d 676, 681, quoting Haddock v City of New York, 75 NY2d at 485; see Connolly v Long Is. Power Auth., 30 NY3d 719).
Here, contrary to the Town's contention, the allegations contained in the complaint do not establish, as a matter of law, that the Town police department was engaged in a discretionary act when it returned the handgun to Groesbeck (see Benway v City of Watertown, 1 AD2d at 467). Rather, the complaint alleges that Groesbeck's possession of the handgun was illegal and that, under the circumstances of this case, the Town police department lacked the legal authority to return it to him (cf. Penal Law § 400.05[1]).
The Town nevertheless contends that the release of the handgun was discretionary because Groesbeck was a former police officer entitled to possession of the handgun pursuant to 18 USC § 926C. However, that provision sets forth several requirements before a retired law enforcement officer may be considered a "qualified retired law enforcement officer" within the meaning of that statute, including retirement in good standing, service for an aggregate of 10 years or more, and qualification for firearms training for active law enforcement officers in the most recent 12-month period (18 USC § 926C[c]). The question of whether Groesbeck satisfied those requirements is not addressed in this record, and involves issues of fact beyond the scope of a motion to dismiss pursuant to CPLR 3211(a).
Even assuming that the allegedly negligent act of returning the handgun was discretionary in nature, it cannot be said, as a matter of law, that "the discretion possessed by [the Town] was in fact exercised" (Valdez v City of New York, 18 NY3d at 76; see Mon v City of New York, 78 NY2d at 313; Haddock v City of New York, 75 NY2d at 484), or that any such exercise of discretion was "in compliance with the municipality's procedures" (Johnson v City of New York, 15 NY3d at 681). Accordingly, "resolution of [the Town's] argument that [it] is entitled to governmental immunity—an affirmative defense on which [it] bears the burden of proof—is not appropriate at this stage of the proceedings" (Villar v Howard, 28 NY3d at 80-81[citation omitted]).
In light of the foregoing, we agree with the Supreme Court's determination to deny that branch of the Town's motion which was pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it.
RIVERA, J.P., MILLER, HINDS-RADIX and MALTESE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court