Relf v City of Troy (2019 NY Slip Op 01287)





Relf v City of Troy


2019 NY Slip Op 01287


Decided on February 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 21, 2019

527100

[*1]THEODORE RELF et al., Respondents,
v
CITY OF TROY et al., Appellants, et al., Defendants.

Calendar Date: January 8, 2019

Before: Lynch, J.P., Mulvey, Devine and Aarons, JJ.


Pattison, Sampson, Ginsberg & Griffin, Troy (Michael E. Ginsberg of counsel), for appellants.
Hach & Rose LLP, New York City (Robert F. Garnsey of counsel), for respondents.



MEMORANDUM AND ORDER
Mulvey, J.
Appeals (1) from an order of the Supreme Court (McGrath, J.), entered October 12, 2017 in Rensselaer County, which, among other things, partially denied motions by defendants City of Troy and Justin Ashe for summary judgment dismissing the complaint against them, and (2) from an order of said court, entered March 22, 2018 in Rensselaer County, which, upon reargument, modified the prior order.
On December 28, 2013, an employee of a gas station located in the City of Troy, Rensselaer County reported to defendant Troy Police Department that two men entered the premises with guns, stole money and other items, then fled. Defendant Justin Ashe, a patrol officer who was a member of the K-9 division, responded to the scene and attempted to track the suspects with his K-9 partner, Elza. While conducting an area search, Ashe released Elza from her leash and she went out of Ashe's sight. As plaintiff Theodore Relf was walking to his car from his daughter's house, Elza came at him, growled and, as he tried to climb on the hood of his car to get away from the dog, she bit and held onto his knee.
Relf and his wife, derivatively, commenced this action against the Troy Police Department, Ashe, defendant City of Troy and defendant Raymond White, the sergeant in charge of the operation, to recover damages for injuries sustained under various theories of liability, [*2]including 42 USC § 1983 and claims of common-law negligence and battery. Defendants separately moved for summary judgment dismissing the complaint. Supreme Court dismissed all claims against White and concluded that the Troy Police Department is an arm of the City that cannot be sued independently. Finding questions of fact, the court denied the motions with respect to the 42 USC § 1983 claims against Ashe and the City, as well as the claims for battery against Ashe and negligent hiring and supervision against the City, but dismissed the remaining claims. The court subsequently granted plaintiffs' motion to reargue and, upon reargument, reinstated the common-law negligence claims against the City and Ashe (hereinafter collectively referred to as defendants). Defendants appeal.
Supreme Court properly declined to grant summary judgment dismissing the 42 USC § 1983 claims alleging that the use of excessive force violated Relf's constitutional rights. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (Graham v Connor, 490 US 386, 396 [1989] [internal quotation marks and citations omitted]). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene" and depends on the facts in the particular case (id.; see Jarrett v Town of Yarmouth, 331 F3d 140, 148 [1st Cir 2003], cert denied 540 US 1017 [2003]). "Because of its intensely factual nature, the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide" (Holland v City of Poughkeepsie, 90 AD3d 841, 844 [2011] [citation omitted]).
Despite having worked in Troy as a police officer for several years, Ashe was unaware that there were residences near where he conducted the area search with Elza off leash. When searching off leash, there is no standard or policy of allowable distance or time a K-9 may be away from the handler, and the dogs are trained to work independently from their handlers. Ashe testified that Elza was "trained to bite without a command from the handler." He also testified that she followed police procedure when she bit Relf because Relf jumped on the hood of his car to get away from her. Although Relf was not a person they were looking for, Ashe testified that Elza "did exactly what she was trained and supposed to do. She doesn't know to differentiate between the person we're tracking and the person that is actually walking out of a house or walking down the street." Elza had previously bitten another police officer and an innocent bystander while tracking suspects under different circumstances. There is at least a question of fact as to whether a reasonable police officer, aware that the dog could not differentiate a suspect from an innocent bystander, would allow the dog to search off leash and out of sight of the handler. Moreover, the record contains evidence from which a jury could find that the City "fail[ed] to train its employees in a relevant respect [that] evidences a deliberate indifference to the rights of its inhabitants[, which] can . . . be properly thought of as a city policy or custom that is actionable under [42 USC] § 1983" (Holland v City of Poughkeepsie, 90 AD3d at 848 [internal quotation marks and citation omitted]; see City of Canton v Harris, 489 US 378, 389 [1989]; Walker v City of New York, 974 F2d 293, 297-298 [2d Cir 1992], cert denied 507 US 961, 972 [1993]; compare Matthews v Jones, 35 F3d 1046, 1051-1052 [6th Cir 1994]). Accordingly, defendants did not establish that they were entitled to summary judgment on the 42 USC § 1983 claims.
Supreme Court properly concluded that Ashe has not established as a matter of law that he is entitled to qualified immunity. "[O]fficers are entitled to qualified immunity under [42 USC] § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the [*3]unlawfulness of their conduct was 'clearly established at the time'" (District of Columbia v Wesby, 583 US ___, ___, 138 S Ct 577, 589 [2018], quoting Reichle v Howards, 566 US 658, 664 [2012]). As noted above, there is a triable issue of fact on the first prong. As to the second prong, "[e]ven where an officer is found to have used excessive force, . . . the doctrine of qualified immunity will shield that officer from liability for damages if his [or her] conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (Outlaw v City of Hartford, 884 F3d 351, 366 [2d Cir 2018] [internal quotation marks, brackets and citations omitted]). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he [or she] is doing is unlawful" under the circumstances presented (District of Columbia v Wesby, 138 S Ct at 589 [internal quotation marks and citations omitted]). The qualified immunity standard is objective and considers "what would have been known to or believed by a reasonable officer in the defendant's position" (Outlaw v City of Hartford, 884 F3d at 367; see Anderson v Creighton, 483 US 635, 640-641 [1987]; Holland v City of Poughkeepsie, 90 AD3d at 844). The determination of whether a right was clearly established at the time of the alleged violation is a question of law for the court to decide (see Crawford-El v Britton, 523 US 574, 589 [1998]), whereas whether an objective officer would reasonably believe that the conduct at issue did not violate a clearly established right is a mixed question of law and fact requiring a jury determination (see Lennon v Miller, 66 F3d 416, 422 [2d Cir 1995]).
It has been clearly established that an innocent citizen should not be seized, as happened to Relf when a police dog bit and held him, nor should anyone be subjected to excessive force by the police. Questions remain regarding whether an objective officer would reasonably believe that these rights were violated by Ashe when he released Elza from her leash to conduct a search despite having knowledge that she had previously bitten two innocent people. Moreover, Ashe allowed Elza to search at a distance from which he could no longer observe and supervise the dog's conduct. The reasonableness of Ashe's actions is challenged by the disputed nature of whether the incident occurred in a residential or commercial setting, which raises questions of fact about whether Ashe should have known that Relf was a foreseeable victim of Elza's aggression. Furthermore, Ashe testified that Elza was incapable of making the distinction between a fleeing suspect and an innocent bystander, thereby suggesting that Ashe should have been aware of the risk of deploying his dog and the probability of violating a bystander's Fourth Amendment rights against unlawful seizure (compare Davila v City of New York, 139 AD3d 890, 893-894 [2016], lv denied 28 NY3d 914 [2017]). More to the point, plaintiffs' expert, Vanness Bogardus, opined in his affidavit that Ashe failed to comply with standard police practice, including keeping the K-9 within visual range and providing audible warnings. Based on the foregoing, there are triable issues of fact that preclude summary judgment on the issue of Ashe's entitlement to qualified immunity (see Anderson v Creighton, 483 US at 640-641; Outlaw v City of Hartford, 884 F3d at 366; Curry v City of Syracuse, 316 F3d 324, 334-335 [2d Cir 2003]; Hemphill v Schott, 141 F3d 412, 417-418 [2d Cir 1998]; Holland v City of Poughkeepsie, 90 AD3d at 844).
Supreme Court correctly refused to dismiss the battery cause of action. "To recover damages for battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, i.e., wrongful under all of the circumstances, and intent to make the contact without the plaintiff's consent" (Holland v City of Poughkeepsie, 90 AD3d at 846 [internal quotation marks and citation omitted]). "The intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive"; "there is no requirement that the contact be [*4]intended to cause harm" (Cerilli v Kezis, 16 AD3d 363, 364 [2005] [internal quotation marks, brackets and citations omitted]; see Tower Ins. Co. of N.Y. v Old N. Blvd. Rest. Corp., 245 AD2d 241, 242 [1997]). Ashe argues that he did not intend for his dog to make any contact with Relf because Ashe was unaware of Relf's presence when he released Elza. However, if Ashe intentionally released his dog with the intent that she seize or bite someone (i.e., the robbery suspects), he can be held responsible for battery against a person who was unintentionally injured by the instrumentality he released (see Jones v State of New York, 96 AD2d 105, 110-111 [1983], lv denied 62 NY2d 605 [1984]).
Supreme Court did not err in determining, on reargument, that the common-law negligence claims need not be dismissed merely because Relf also asserted a battery claim, as an intentional tort and negligence can be pleaded in the alternative (see CPLR 3014). The record contains evidence from which a jury could conclude that Ashe intended for Elza to locate someone, but not to bite anyone, and that he was negligent in allowing her to search off leash and at a distance such that he could not see or readily control her. Thus, questions of fact remain as to Ashe's liability under common-law negligence.
Nevertheless, the City was entitled to dismissal of the common-law negligence claims based on the professional judgment rule. " That rule 'insulates a municipality from liability for its employees' performance of their duties where the . . . conduct involves the exercise of professional judgment such as electing one among many acceptable methods of carrying out tasks, or making tactical decisions'" (Malay v City of Syracuse, 151 AD3d 1624, 1625 [2017], lv denied 30 NY3d 904 [2017], quoting Johnson v City of New York, 15 NY3d 676, 680 [2010]). The rule "presupposes that judgment and discretion are exercised in compliance with the municipality's procedures" (Johnson v City of New York, 15 NY3d at 681; see Normanskill Cr., LLC v Town of Bethlehem, 160 AD3d 1249, 1252 [2018]). Bogardus' affidavit challenged the City's procedures as vague, contrary to generally accepted police procedures regarding use of force and inadequate to protect citizens from the use of excessive force. This expert opined that the City should adopt a different policy, and that its policy did not comport with generally accepted police standards. Although some cases from other Departments have resolved the application of the professional judgment rule based on whether an officer acted in violation of accepted police procedures (see e.g. Newsome v County of Suffolk, 109 AD3d 802, 803 [2d Dept 2013]; Arias v City of New York, 22 AD3d 436, 437 [2d Dept 2005]; Lubecki v City of New York, 304 AD2d 224, 233-234 [1st Dept 2003], lv denied 2 NY3d 701 [2004]; Rodriguez v City of New York, 189 AD2d 166, 178 [1st Dept 1993]), the Court of Appeals has stated that the rule requires the officer to exercise discretion in compliance with the municipality's "own procedures" (Haddock v City of New York, 75 NY2d 478, 485 [1990]; see Johnson v City of New York, 15 NY3d at 681). As the record does not disclose any violation of the City's enacted policy, the City was entitled to summary judgment dismissing the common-law negligence claims.
Lynch, J.P., Devine and Aarons, JJ., concur.
ORDERED that the order entered October 12, 2017 is affirmed, without costs.
ORDERED that the order entered March 22, 2018 is modified, on the law, without costs, by reversing so much thereof as reinstated the common-law negligence causes of action against defendant City of Troy, and, as so modified, affirmed.